902 So.2d 566 (2005)
Tara M. OLAVARRIETA
v.
Jerry ST. PIERRE, M.D., Samuel M. Alexander, M.D. and Tenet Healthsystem Memorial Medical Center, Inc., Individually, D/B/A, and Memorial Medical Center, F/K/A Mercy+Baptist Medical Center.
No. 2004-CA-1566.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 2005.
Rehearing Denied May 31, 2005.
*567 Kevin D. Shearman, Metairie, Counsel for Plaintiff/Appellant, Tara Olavarrieta.
Susan E. Henning, James A. Cobb, Jr., Emmett, Cobb, Waits & Kessenich, New Orleans, Counsel for Defendants/Appellees, Christian Health Ministries Formerly Known as Mercy+Baptist Medical Center, Jerry J. St. Pierre, M.D. and Samuel Alexander, M.D.
Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.
CANNIZZARO, J.
The plaintiff, Tara Olavarrieta, appeals a judgment of the district court denying her motion to set aside the dismissal of her medical malpractice suit against the defendants, Jerry J. St. Pierre, M.D., Samuel M. Alexander, M.D., and Christian Health Ministries, formerly known as Mercy+Baptist Medical Center, on grounds of abandonment. We affirm.

FACTS AND PROCEDURAL HISTORY
On January 24, 1995, Ms. Olavarrieta, who was nine months pregnant, was admitted to Mercy+Baptist Medical Center for the birth of her unborn child. Soon thereafter, she underwent a Cesarean section performed by Dr. St. Pierre and delivered a healthy baby girl. Several hours later, Ms. Olavarrieta began to hemorrhage. Dr. St. Pierre prescribed medication to stop the bleeding and transferred Ms. Olavarrieta to the intensive care unit, where she received several blood transfusions. Three days later, on January 27, 1995, Dr. *568 Alexander approved Ms. Olavarrieta's discharge from the hospital.
On January 31, 1995, Ms. Olavarrieta began to hemorrhage again and went to the emergency room at University Medical Center, where she again received three pints of blood. Dr. James Brown, the emergency room physician, performed a dilation and curettage (D & C), a procedure in which the cervix is dilated and the lining of the uterus is scraped with a spoon-shaped instrument called a curette. The pathology report showed uterine changes consistent with a person who had just completed a pregnancy. Mrs. Olavarrieta was discharged two days later in good condition and had no further complications.
On January 25, 1996, Ms. Olavarrieta filed a request for a medical review panel, complaining that Dr. St. Pierre, Dr. Alexander and Mercy+Baptist Medical Center breached the applicable standard of care. On March 16, 1998, after reviewing the evidence submitted, the medical review rendered an opinion finding the evidence did not support the conclusion that the defendants had failed to meet the applicable standard of care.
Despite the medical review panel's decision, Ms. Olavarrieta filed suit against the defendants on May 13, 1998. She filed a supplemental and amending petition on August 12, 1998, which the defendants answered on August 17, 1998. No action was taken in the case from August 17, 1998 until February 21, 2001, when the plaintiff's new attorney filed a motion to substitute himself as the attorney of record and propounded two interrogatories to the defendants.
On March 6, 2001, the defendants responded to the plaintiff's interrogatories and also propounded interrogatories to the plaintiff seeking the identification of any expert witness and any evidence that would support the allegations set forth in her petition. On April 11, 2001, defense counsel sent a letter to the plaintiff's counsel advising that she had not received any answers to the defendants' interrogatories and that she would contact him on April 20, 2001 to discuss the status of the outstanding discovery requests. Defense counsel called the plaintiff's counsel on that date but he was unavailable. Nonetheless, she spoke to someone in his office who informed her that the plaintiff's responses to the interrogatories would be forthcoming.
On March 9, 2004, more than three years after the defendants propounded the interrogatories to the plaintiff, which she failed to answer, they filed a motion to dismiss on the basis of abandonment pursuant to La. C.C. P. art. 561. The trial court granted the motion and dismissed the plaintiff's suit.
Shortly thereafter, the plaintiff filed a motion to set aside the order of dismissal for abandonment. Following a contradictory hearing, the trial court rendered judgment on June 2, 2004, denying the motion. The plaintiff appeals this judgment.

LAW AND DISCUSSION
Whether the plaintiff's suit against the defendants was abandoned is a question of law. Thus, the standard of review of an appellate court in reviewing a question of law is simply whether the lower court's interpretive decision is correct. Faust v. Greater Lakeside Corporation, XXXX-XXXX, p. 3, (La.App. 4 Cir. 11/26/03), 861 So.2d 716, 718.
Article 561 of the Louisiana Code of Civil Procedure provides, in pertinent part:
A. (1) An action is abandoned when the parties fail to take any step in its *569 prosecution or defense in the trial court for a period of three years...
(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The sheriff shall serve the order in the manner provided in Article 1314, shall execute a return pursuant to Article 1292.
* * * * * *
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
Article 561 imposes three requirements on plaintiffs to avoid abandonment:
First plaintiffs must take some "step" towards prosecution of their lawsuit. In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step.
Clark v. State Farm Mut. Auto. Ins. Co., XXXX-XXXX, p. 5-6 (La.5/15/01), 785 So.2d 779, 784 (footnotes and emphasis omitted). Furthermore, the accrual of abandonment occurs automatically upon the passing of three years without a step being taken by either party, and it is effective without court order. Id. at p. 6, 785 So.2d at 784.
There are however two exceptions to the abandonment rule set forth in La. C.C.P. art. 561. The first exception is based on the concept of contra non valentem, and it is applicable in situations where the plaintiff is prevented by circumstances beyond the plaintiff's control from prosecuting a case. The second exception is applicable when the defendant waives the right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned. Id. at p. 7, 785 So.2d at 784-85.
In her sole assignment of error, the plaintiff asserts that the trial court erred in dismissing her medical malpractice action on the basis of abandonment where defense counsel sent a written letter on April 11, 2001 to her attorney inquiring about her responses to the defendants' interrogatories and the parties took part in a "discovery conference" on April 20, 2001.
In the cases of Madison v. Touro Infirmary, XXXX-XXXX, p. 4 (La.App. 4 Cir. 8/14/02), 826 So.2d 568, 570-71, Naccari v. Namer, 2001-2410, p. 5 (La.App. 4 Cir. 2/6/02), 809 So.2d 1157, 1160, and Alexander v. Liberty Terrace Subdivision, Inc., 99-2171, p. 5 (La.App. 4 Cir 4/12/00), 761 So.2d 62, we held that the mailing of informal correspondence between the parties cannot be construed as formal discovery and is insufficient to prevent abandonment or to interrupt the running of the three-year period prescribed in La. C.C.P. art. 561.
Similarly, the Second Circuit Court of Appeal, in Gallagher v. Cook, 34,158 (La. App. 2 Cir. 12/15/00), 775 So.2d 79, found that correspondence filed in the record evidencing the parties' willingness to participate in mediation neither served to interrupt the tolling of the three-year abandonment *570 period nor relieved the plaintiff of his obligation to take a step, on the record, to hasten an asserted medical malpractice action to judgment.
In this case, the last action constituting formal discovery by a party in furtherance of the prosecution or defense of the case occurred when the defendants submitted interrogatories to the plaintiff on March 6, 2001. Contrary to the plaintiff's assertion, we find that defense counsel's written correspondence of April 11, 2001 to the plaintiff's counsel inquiring as to the status of the plaintiff's responses to the interrogatories did not constitute a step in the defense of the case sufficient to interrupt the three-year abandonment period of La. C.C.P. art. 561. Such informal written correspondence cannot be construed as formal discovery as contemplated by La. C.C.P. art. 561 and did not relieve the plaintiff of her obligation to take a step in the prosecution of the case to hasten the action to judgment.
Moreover, the plaintiff's reference to the "discovery conference" that took place on April 20, 2001 cannot be considered a step in the prosecution or defense of the case in the trial court as required by La. C.C.P. art. 561. It is clear from the transcript of the hearing on the plaintiff's motion to set aside the dismissal that the so called "discovery conference" was merely the telephone conversation that occurred on April 20, 2001 between defense counsel and someone from plaintiff's counsel's office, who informed her that the plaintiff's responses to the defendants' interrogatories would be forthcoming. It is undisputed that neither the plaintiff nor her attorney spoke to the defense attorney during that telephone conversation.
The plaintiff cites our decision in Jefferson Indoor Shooting Center v. New Orleans Sports, Inc., 95-1978, 95-1979 (La. App. 4 Cir. 3/14/96), 671 So.2d 976, to argue that La. C.C. P. art. 561 should be interpreted liberally to maintain the action whenever possible so that the allegedly aggrieved party has his day in court. In that case, the plaintiff filed two suits in September 1988 against the defendant in contravention of an automatic bankruptcy stay that was in effect in favor of the defendant at that time. Both petitions were served, and the defendant answered asserting the bankruptcy stay. Thereafter the suits lay dormant. The bankruptcy was dismissed on September 6, 1990. By letter dated April 26, 1993, but date stamped received on July 1, 1993 by the clerk of court's office, the plaintiff asked that the service of the original suits be re-issued. On February 10, 1995, the plaintiff filed a motion to appoint a special process server alleging that the service of the re-issued petitions had been returned marked: "unable to servemoved." Defendant filed a motion to dismiss, arguing that the original petitions were void ab initio because of the bankruptcy stay and, alternatively, the suits should be dismissed as abandoned by the plaintiff based on five years non-prosecution under La. C.C.P. art. 561.[1] The trial court dismissed the case for five years non-prosecution, reasoning that the dismissal of the bankruptcy proceeding had the effect "as though the bankruptcy had never been filed," and since, in effect, there was no bankruptcy, the five year period for non-prosecution began to run on September 2, 1988, when the plaintiff filed the petitions. The trial court further concluded that since the bankruptcy was considered as though it *571 never occurred, plaintiff's attempt to reserve the petitions was not a step in the prosecution of the case as the defendant had filed an answer in 1988. Thus, there was no reason to reserve the petitions.
On appeal, we concluded that if the original petitions were void ab initio, the request for the re-serving of the petitions in 1993 would be tantamount to the original filing of the petitions. To require the plaintiff to refile the petitions would be needlessly technical and serve no purpose. Therefore, the five-year period provided by La. C.C.P. art. 561 would not begin to run until the plaintiff requested that the petitions be re-served in 1993, which would be considered the time of the initial filing for article 561 purposes. If, on the other hand, the original petitions were not void ab initio then the request for the re-serving of those petitions on or before July 1, 1993 was sufficient to satisfy the requirements of article 561 based on the original filings of those petitions in September 1988. We found that the plaintiff's actions were reasonable under the circumstances, noting that it was faced with contradictory laws and jurisprudence that say on the one hand that anything done in contravention of the bankruptcy stay order is void, but on the other hand, say that when a bankruptcy is dismissed it is as though it never occurred. In any event, in reversing the trial court, we expressly limited our decision to the narrow facts of the case, stating that "[i]t was not the intention of [La. ]C.C.P. art. 561 that a party be expected to resolve the complex conundrum presented by the unusual facts of this case which even the courts find difficult and perplexing." Id. at p. 5, 671 So.2d at 979.
Unlike the complex factual scenario in Jefferson Indoor Shooting Center, the facts in this case are simple and straightforward. Ms. Olavarrieta simply failed to take any step after March 6, 2001 to further prosecute her case or move it toward judgment. Also, she has not demonstrated that her failure to prosecute was caused by circumstances beyond her control or that the defendants waived their right to assert abandonment by taking an action inconsistent with an intent to treat the case as abandoned.
Abandonment is not a punitive measure, but rather is designed to discourage frivolous lawsuits by preventing plaintiffs from letting them linger indefinitely. While the law favors granting an aggrieved party his day in court, the legislature has set forth a procedure and a time period for taking action to prevent a case from being considered as abandoned. The language of La. C.C.P. art. 561 is clear and unambiguous. Naccari v. Namer, 2001-2410, at. p. 7, 809 So.2d at 1162. In this case, we find the trial court correctly interpreted article 561 in determining that Ms. Olavarrieta had abandoned her suit against the defendants.

CONCLUSION
Accordingly, the June 2, 2004 judgment of the trial court, denying Ms. Olavarrieta's motion to set aside the dismissal of her suit against the defendants, is affirmed.
AFFIRMED
NOTES
[1] Prior to its amendment in 1997, La. C.C.P. art. 561 provided that an action was abandoned when the parties failed to take any step in its prosecution or defense for a period of five years.