| | | |
|---|---|---|
| **DARLEEN M. JACOBS (A PROFESSIONAL LAW CORPORATION)** | * | **NO. 2020-CA-0585** |
| | * | |
| | | **COURT OF APPEAL** |
| **VERSUS** | * | |
| | | **FOURTH CIRCUIT** |
| **LORRAINE METZLER-BRENCKLE, M.D.** | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

| | |
|---|---|
| <u>**CONSOLIDATED WITH:**</u> | <u>**CONSOLIDATED WITH:**</u> |
| **DARLEEN M. JACOBS (A PROFESSIONAL LAW CORPORATION)** | **NO. 2020-CA-0607** |
| **VERSUS** | |
| **LORRAINE METZLER-BRENCKLE, M.D.** | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2001-20021, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)


DARLEEN M. JACOBS
AL SARRAT
RENE' D. LOVELACE
HUNTER HARRIS
DARLENE M. JACOBS, APLC
823 St. Louis Street
New Orleans, Louisiana 70112


COUNSEL FOR PLAINTIFF/APPELLEE/CROSS-APPELLANT

JOHN A. HOLLISTER
ATTORNEY AT LAW
613 Bon Temps Roule
Mandeville, Louisiana 70471


COUNSEL FOR DEFENDANT/APPELLANT/CROSS-APPELLEE


**CONSOLIDATED APPEALS CONVERTED TO WRITS;
WRITS GRANTED; RELIEF DENIED**


**MAY 26, 2021**

This consolidated appeal involves a petition on an open account. Appellant/Cross-Appellee, Lorraine Metzler-Brenckle, M.D. ("Dr. Brenckle"), appeals the trial court's February 14, 2020 judgment denying her motion to dismiss for abandonment the petition on open account filed by Appellee, Darleen M. Jacobs, A Professional Law Corporation ("Ms. Jacobs"). Ms. Jacobs, filing her own cross appeal, seeks reversal of the trial court's October 9, 2020 judgment denying her motion to supplement the record for Dr. Brenckle's appeal. For the following reasons, we find that neither judgment is a valid, final judgment over which we have appellate jurisdiction, but we exercise our discretion to convert the appeals to applications for supervisory writs. Further, we grant the writs, and deny relief.

## FACTUAL BACKGROUND

The facts leading up to the filing of the petition on open account are as follows. In July 1994, Dr. Brenckle engaged Ms. Jacobs to represent her as legal counsel in a divorce. During Ms. Jacobs' representation of Dr. Brenckle, Dr. Brenckle incurred expenses in the amount of $4,209.25 and attorney's fees in the amount of $30,000. Ms. Jacobs has also alleged that she loaned Dr. Brenckle

1

$5,000 while she represented Dr. Brenckle. Thus, according to Ms. Jacobs, Dr. Brenckle owed Ms. Jacobs $39,209.25.

On August 7, 1998, Ms. Jacobs sent Dr. Brenckle a bill for the outstanding amount. Dr. Brenckle made a few payments on the outstanding debt: $500 on March 25, 1999; $50 on September 27, 1999; and $150 on December 20, 1999. After the December 1999 payment, however, Dr. Brenckle made no other payments on the outstanding debt, despite Ms. Jacobs' demand.

## PROCEDURAL HISTORY

On December 5, 2001, after Dr. Brenckle failed to pay the debt owed to Ms. Jacobs, Ms. Jacobs filed a Petition/Claim for Attorney's Fees in Orleans Parish Civil District Court. Ms. Jacobs sought an award of the outstanding costs, attorney's fees, and judicial interest from the date of demand.

Although Ms. Jacobs requested service and citation of the petition on Dr. Brenckle through the Orleans Parish Sheriff's Office at the time she filed the petition in December 2001, the record shows that Dr. Brenckle was not served with the petition until May 13, 2016, long after Ms. Jacobs filed the petition. Ms. Jacobs claims that Dr. Brenckle came to Ms. Jacobs' office on January 25, 2002, shortly after the petition was filed, and made a $150 payment toward the outstanding debt, whereupon Ms. Jacobs advised Dr. Brenckle of the pending lawsuit and gave Dr. Brenckle a copy of the petition. Ms. Jacobs claims that, despite Dr. Brenckle's actual knowledge of the pending lawsuit, Dr. Brenckle successfully "dodged" service of the petition for several years, until a special process server finally served Dr. Brenckle with the petition and citation in 2016.

During the time between when Ms. Jacobs filed the petition and when Dr. Brenckle was served, the parties took several actions in this litigation, with Dr.

Brenckle making direct payments to Ms. Jacobs on the debt Dr. Brenckle owed, and Ms. Jacobs filing numerous motions before the trial court. Because the timing of the parties' actions is relevant to this Court's determination of whether this matter is abandoned, each action is detailed below.

### December 2001 through December 2004

The record shows that, after Ms. Jacobs filed her Petition/Claim for Attorney's Fees on December 5, 2001, and after Dr. Brenckle made a $150 payment toward the debt in January 2002, no other activity occurred in the matter until September 10, 2004, when Ms. Jacobs filed a motion to set a status conference and to set cut-off dates. The trial court granted this motion, and set the matter for a status conference on December 8, 2004 "for purposes of establishing discovery deadlines." The record is unclear if the trial court held the scheduled status conference. Presumably, the trial court did not hold the status conference as scheduled because the record shows that Ms. Jacobs filed another motion to set status conference on December 10, 2004, two days after the scheduled date for the first status conference.

The record indicates that the status conference Ms. Jacobs requested on December 10, 2004 never occurred. The motion has a handwritten notation by the minute clerk dated July 28, 2005, which says that the motion is moot because Ms. Jacobs' secretary never called back to confirm a date for the telephone conference.

### March 2007 through December 4, 2009

Following Ms. Jacobs' December 10, 2004 motion to set status conference, the record shows that the parties took no action until March 14, 2007, when Ms. Jacobs filed another motion to set status conference and to establish discovery cut-off dates. The trial court granted the motion and set a telephone status conference

for April 27, 2007. The record then shows that the telephone conference was then rescheduled to May 4, 2007. The record does not indicate that the telephone status conference occurred on May 4, 2007.

On June 6, 2007, Dr. Brenckle made a $2,000 payment to Ms. Jacobs. Dr. Brenckle made additional payments of $2,000 each on (1) June 6, 2007; (2) July 6, 2007; (3) August 21, 2007; (4) September 24, 2007; (5) November 2, 2007; (6) January 8, 2008; and (7) May 22, 2008.

Ms. Jacobs filed another motion to set status conference on July 21, 2008. Again, the trial court granted the motion and set a telephone status conference for September 5, 2008. The record does not indicate whether the telephone status occurred. On October 22, 2009, Ms. Jacobs filed yet another motion to set status conference. The trial court granted the motion and set a telephone status conference for December 4, 2009.

Each time the trial court granted the motions to set status conferences, the trial court noted that Ms. Jacobs had the responsibility as the mover to initiate the call and to notify all parties of the conference. The record indicates that the telephone conference set for December 4, 2009 occurred as scheduled because the trial court issued a discovery schedule, which set cutoff dates for the parties to send their respective lists of witnesses, experts, and exhibits to each other, as well as to complete all discovery. The discovery schedule set: (1) January 8, 2010 as the deadline for Ms. Jacobs to send her list of trial witnesses, experts, and exhibits to Dr. Brenckle; (2) February 8, 2010 as the deadline for Dr. Brenckle to send her list of trial witnesses, experts, and exhibits to Ms. Jacobs; and (3) May 7, 2010 as the deadline for both parties to complete all discovery and depositions. The discovery

4

schedule indicates, however, that neither Dr. Brenckle, nor any representative for her, participated in this conference.

***December 28, 2009 through October 17, 2014***

On December 28, 2009, Ms. Jacobs timely filed a Preliminary Witness List and Preliminary Exhibit List as required by the December 4, 2008 discovery schedule. After the discovery cut-off dates passed without any action by Dr. Brenckle, Ms. Jacobs alleges she filed another motion to set a status conference on April 24, 2012, for the purpose of setting a trial date. This motion does not appear in the record nor is there any indication in the record that Ms. Jacobs filed it.

Ms. Jacobs alleges that she sent Dr. Brenckle a copy of the April 24, 2012 motion to set status conference. Ms. Jacobs further claims that, after Dr. Brenckle received notice of the filing of the motion, this prompted Dr. Brenckle to make additional payments to Ms. Jacobs on the outstanding debt. The record shows that Dr. Brenckle made $2,000 payments on each of the following dates: (1) April 15, 2012; (2) May 2, 2012; (3) June 5, 2012; (4) June 12, 2012; and (5) July 15, 2012. The record also indicates by way of handwritten note on the deposit slip for Dr. Brenckle's May 2, 2012 payment that Dr. Brenckle intended to make monthly $2,000 payments for the next eight months.

Thereafter, no pleading appears in the record until Ms. Jacobs' May 14, 2014 motion and order to set status conference. In this motion, Ms. Jacobs represented that it was necessary to establish discovery, witness, and exhibit cutoff dates, and to select a trial date. A telephone conference was scheduled for October 17, 2014 at 10 a.m. The record is unclear if the telephone conferenced scheduled for October 17, 2014 occurred.

*October 27, 2014 through December 2019*

On October 27, 2014, Ms. Jacobs filed a motion to appoint a special process server. The trial court granted the motion to appoint a special process server the following day, on October 28, 2014. On October 1, 2015, Ms. Jacobs filed a letter requesting re-issuance of service on Dr. Brenckle.

On May 11, 2016, Ms. Jacobs again moved to have the trial court appoint a special process server to serve the petition upon Dr. Brenckle, and the trial court granted the motion. Thereafter, Dr. Brenckle was personally served with the petition and citation by the special process server on May 13, 2016. On May 31, 2016, Dr. Brenckle filed a motion for extension of time to file responsive pleadings, which the trial court granted, allowing Dr. Brenckle an additional thirty days to file pleadings responsive to the petition.

Dr. Brenckle failed to timely answer the petition within thirty days as ordered. Accordingly, on August 31, 2016, Ms. Jacobs filed a motion for preliminary default, which was granted by the trial court on September 7, 2016. The preliminary default was confirmed on July 26, 2019. On October 29, 2019, Ms. Jacobs filed a motion to examine judgment debtor, requesting that the trial court order Dr. Brenckle to appear in open court and be examined as a judgment debtor. The trial court granted the motion to examine judgment debtor and set a hearing for December 13, 2019. On December 5, 2019, Ms. Jacobs' moved to continue the December 13, 2019 hearing because Dr. Brenckle had not yet been served with the motion to examine judgment debtor. The trial court granted the motion to continue the December 13, 2019 hearing and reset the hearing for January 20, 2020. A special process server eventually made domiciliary service of the motion to examine judgment debtor on Dr. Brenckle on December 9, 2019.

### *January 2020 and Dr. Brenckle's Motion to Dismiss for Abandonment*

On January 2, 2020, Dr. Brenckle filed a motion to have the lawsuit recognized as abandoned. Dr. Brenckle argued that the suit was abandoned because there had been two periods of more than three years while the lawsuit was pending when there had been no steps taken by Ms. Jacobs to prosecute her claim. Dr. Brenckle maintained that Ms. Jacobs' motions to set status conferences did not amount to steps taken to prosecute the claim because Dr. Brenckle had not been served with the lawsuit at the time the motions were filed. Dr. Brenckle also maintained that the record was devoid of any evidence that there were ever any status conferences held, which Dr. Brenckle argued was necessary to toll abandonment. Dr. Brenckle contended that abandonment can only be tolled as of the date that the court sets the conference (and actually conducts it), rather than the "unilateral" filing of a motion to set status conference.

On January 6, 2020, Ms. Jacobs filed a memorandum in opposition to Dr. Brenckle's motion to dismiss for abandonment. Ms. Jacobs contended that her motions to set status conferences and requests for service on Dr. Brenckle amounted to steps in the prosecution of her claim and were sufficient to toll abandonment. She also detailed the direct payments Dr. Brenckle made on the outstanding debt from 2002 until July 2012, attaching her own affidavit to the opposition, wherein she attested to having sent each motion she filed in this matter to Dr. Brenckle. Ms. Jacobs claimed Dr. Brenckle made payments on the debt on (1) June 6, 2007; (2) July 6, 2007; (3) August 21, 2007; (4) September 24, 2007; (5) November 2, 2007; (6) January 8, 2008; (7) May 22, 2008; (8) April 15, 2012; (9) May 2, 2012; (10) June 5, 2012; (11) June 12, 2012; and (12) July 15, 2012. Ms. Jacobs contended that Dr. Brenckle's payments on the debt amounted to Dr.

7

Brenckle's waiver of the right to claim abandonment. Ms. Jacobs attached copies of cancelled checks written by Dr. Brenckle to Ms. Jacobs, as well as deposit slips for the checks, to her motion.

### *Hearing on Dr. Brenckle's Motion to Dismiss for Abandonment and Dr. Brenckle's Appeal and Designation of Record*

The hearing on Dr. Brenckle's motion to dismiss for abandonment was held on February 7, 2020, and the trial court denied Dr. Brenckle's motion to dismiss for abandonment on February 14, 2020. Although the trial court based its decision in part on Dr. Brenckle's payments on the debt she owed Ms. Jacobs, the record reflects that Ms. Jacobs did not enter the cancelled checks or deposit slips—nor any other documents in connection with her opposition to Dr. Brenckle's motion to dismiss—into evidence at the hearing. Nevertheless, the trial court found that Ms. Jacobs' motions to set status conferences tolled abandonment because it amounted to a step in the prosecution of her claims against Dr. Brenckle and demonstrated that Ms. Jacobs did not intend to abandon the action. The trial court further found that Dr. Brenckle's payments on the debt between 2002 and 2012 amounted to an acknowledgment of the debt, which also tolled the abandonment period.

On February 24, 2020, Dr. Brenckle devolutively appealed the trial court's denial of her motion to dismiss this action as abandoned. Accordingly, on February 27, 2020, Dr. Brenckle filed a designation of record for appeal. Dr. Brenckle did not include Ms. Jacobs' opposition to the motion to dismiss the case as abandoned or the exhibits that were attached thereto as part of her designation of the record.

### *Ms. Jacobs' Memorandum in Opposition to the Motion to Dismiss*

On February 24, 2020, the same day that Dr. Brenckle filed her designation of the record on appeal, Ms. Jacobs filed a motion to have her memorandum in

opposition to Dr. Brenckle's motion to dismiss the lawsuit for abandonment, as well as the exhibits attached thereto, made a part of the record. Dr. Brenckle opposed Ms. Jacobs' motion to include the exhibits into the record, contending that Ms. Jacobs was attempting to retroactively admit her exhibits into evidence three weeks after the hearing.

Dr. Brenckle contended that, because Ms. Jacobs did not properly and officially offer and introduce her exhibits into evidence at the hearing, the exhibits could not be considered and could not be retroactively entered into the record. Dr. Brenckle argued that the documents attached to Ms. Jacobs' memorandum in opposition do not constitute evidence and cannot be considered on appeal. Ms. Jacobs responded, saying the exhibits should be included because the trial court expressly stated both orally and in the written judgment that it had considered the exhibits in denying the motion to dismiss the lawsuit as abandoned.

On June 23, 2020, the trial court held a hearing on Ms. Jacobs' motion to have her memorandum in opposition to the motion to dismiss the case as abandoned and the attached exhibits entered into the record. On July 14, 2020, the trial court denied Ms. Jacobs' motion to include her exhibits in the record.

### Ms. Jacobs' Designation of Record

On July 22, 2020, Ms. Jacobs filed her own designation of record for appeal. In her designation of record, Ms. Jacobs sought to include all of her motions to set status conferences, Dr. Brenckle's motion for extension of time to file responsive pleadings, the preliminary default granted by the trial court and its confirmation, and her attempts at service on Dr. Brenckle. The designation of record also included a reference to the April 24, 2012 motion to set status conference which does not appear in the record, but which Ms. Jacobs represented was filed. Ms.

Jacobs claimed the "electronic record" of the trial court—a screenshot of the trial court's clerk of court's website showing motions that were allegedly filed in this matter—showed that the motion had been filed.

On July 26, 2020, Dr. Brenckle moved to strike Ms. Jacobs' designation of record. Dr. Brenckle argued that Ms. Jacobs' designation of record was untimely and was a second improper attempt by Ms. Jacobs to have her exhibits introduced into the appeal record when they were not introduced at the hearing on the motion to dismiss. Ms. Jacobs opposed Dr. Brenckle's motion to strike, claiming that the trial court's "online record" shows Ms. Jacobs filed a motion to set a status conference on April 24, 2012, but Ms. Jacobs claimed that the hard copy was lost at the courthouse. Thus, Ms. Jacobs argued, the record was incomplete, rendering this Court unable to review the trial court's judgments on appeal.

On August 7 and 10, 2020, Ms. Jacobs filed a motion and amended motion, respectively, to supplement the record pursuant to La. C.C.P. art. 2132,[1] wherein she asked the trial court to supplement the record on appeal with all of the items contained in her designation of record. The motions[2] asked the trial court to supplement the record with items listed in "Exhibit A," which was Ms. Jacobs' designation of the record filed on July 22, 2020.

_____

[1] La. C.C.P. art. 2132 provides:

> A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.

[2] The motion to supplement and the amended motion to supplement are virtually identical, except that the first motion to supplement references "Exhibit A" (Ms. Jacobs' July 22, 2020 designation of record) but failed to attach "Exhibit A," while the amended motion has "Exhibit A" attached. Presumably, Ms. Jacobs neglected to include "Exhibit A" when she filed the first motion to supplement, and she filed the amended motion to supplement to correct that mistake.

***Hearing on Ms. Jacobs' Motions to Supplement the Record and Designation of Record and Dr. Brenckle's Motion to Strike***

The hearing on Ms. Jacobs' motions to supplement the record on appeal and on Dr. Brenckle's motion to strike Ms. Jacobs' designation of the record on appeal was held on September 2, 2020. At the hearing, Ms. Jacobs attempted to enter into evidence the "online record" and a cancelled check showing she filed a motion to set status conference in April 2012 and paid for it. The trial court disallowed the exhibit, indicating that it believed Ms. Jacobs was trying to supplement the record for Dr. Brenckle's appeal with something Ms. Jacobs had not properly introduced into the record. The trial court noted that it could not order that the record be supplemented with documents that were not previously introduced as evidence, and the exhibits attached to Ms. Jacobs' memorandum in opposition to the motion to dismiss for abandonment and the "electronic record" were not introduced.

Regarding Ms. Jacobs' designation of the record on appeal and Dr. Brenckle's motion to strike same, the trial court noted that Dr. Brenckle filed her designation of record on appeal on March 2, 2020 and that Ms. Jacobs was served with it on the same date. Accordingly, under the Louisiana Code of Civil Procedure, Ms. Jacobs had five days, exclusive of legal holidays, to file her own designation of the record. Ms. Jacobs' designation of the record, filed on July 22, 2020, over four months after Dr. Brenckle's designation of record, was therefore untimely. Thus, the trial court denied the motion to supplement the record and granted Dr. Brenckle's motion to strike Ms. Jacobs' designation of the record on appeal. The trial court signed its judgment on October 9, 2020.

From this judgment, Ms. Jacobs took a devolutive appeal on October 21, 2020. On December 8, 2020, this Court consolidated Dr. Brenckle's appeal with Ms. Jacobs' appeal.

**DISCUSSION**

This consolidated appeal considers whether the trial court erred in its February 14, 2020 judgment denying Dr. Brenckle's motion to recognize the suit as abandoned and in its October 9, 2020 judgment denying Ms. Jacobs' motion to supplement the appeal record of Dr. Brenckle's appeal. Before considering the parties' assignments of error regarding the trial court's judgments, however, this Court must first consider whether the judgments appealed herein are final and appealable. *See Bayer v. Starr Int'l Corp.*, 2017-0257, p. 3 (La. App. 4 Cir. 8/15/17), 226 So.3d 514, 517-18 ("Prior to addressing the merits of the appeal, appellate courts have the duty to determine *sua sponte* whether our appellate court jurisdiction has been properly invoked by a valid final judgment."); *see also Moon v. City of New Orleans*, 2015-1092, p. 6 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425; *Tsegaye v. City of New Orleans*, 2015-0676, p. 3 (La App. 4 Cir. 12/18/15), 183 So.3d 705, 710; *Delta Staff Leasing, LLC v. S. Coast Solar, LLC*, 2014-1328, p. 2 (La. App. 4 Cir. 9/23/15), 176 So.3d 668.

It is well-settled that judgments in Louisiana are "either interlocutory or final." *Sullivan v. Malta Park*, 2016-0875, p. 2 (La. App. 4 Cir. 1/31/17), 215 So.3d 705, 707 (citing *Brennan v. Shell Offshore, Inc.*, 1993-1525, p. 4 (La. App. 4 Cir. 3/29/94), 635 So.2d 429, 431). The distinction between interlocutory judgments and final judgments is that a final judgment determines the merits of an action in whole or in part, while an interlocutory judgment decides only preliminary matters in the course of the action. *Id.*

An interlocutory judgment is only appealable when expressly provided by law. La. C.C.P. art. 2083. Thus, "[t]he proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 2012-0906, 2012-0907, p. 4 (La. App. 4 Cir. 2/20/13), 155 So.3d 560, 562 (citations omitted).

### *The February 14, 2020 Judgment*

Regarding whether the trial court's February 14, 2020 denial of Dr. Brenckle's motion to dismiss this action as abandoned is a valid, final judgment, we look to this Court's decision in *Reed v. Finklestein*, 2001-1015, p. 2 (La. App. 4 Cir. 1/16/02), 807 So.2d 1032, 1033. In *Reed*, this Court found that "the denial of a Motion to Dismiss for Abandonment is not a final appealable judgment. Rather, it is an interlocutory judgment because it determines a preliminary matter and not the merits of the action." *Id.*

Just as in *Reed*, Dr. Brenckle's appeal concerns the trial court's denial of her motion to dismiss this action as abandoned. The denial is not a final judgment that determines the merits of the underlying litigation. Rather, it is an interlocutory judgment. Thus, we find, as we did in *Reed*, that the judgment Dr. Brenckle appeals is not a valid, final judgment over which we have appellate jurisdiction.

### *The October 9, 2020 Judgment*

Similarly, the trial court's October 9, 2020 judgment granting Dr. Brenckle's motion to strike Ms. Jacobs' designation of the record and denying Ms. Jacobs' motions to supplement the record is not a valid, final judgment. The judgment does not determine all of the claims against the parties, as the original claims—which involve a petition on an open account—still remain. Rather, the judgment determined the preliminary matter of the contents of the record for Dr. Brenckle's

13

appeal. Accordingly, we find, as we did for the trial court's February 14, 2020 judgment, that the October 9, 2020 judgment Ms. Jacobs appeals is not a valid, final judgment.

### *Jurisdiction*

Having found that the judgments that are the subject of this consolidated appeal are not final, this Court can only review the trial court's rulings if we exercise our broad discretionary powers and convert the instant appeals into applications for supervisory writs under La. C.C.P. art. 2164, which provides that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."

In deciding whether to exercise our discretion to convert these appeals into applications for supervisory writs, we must first determine whether "the motion for appeal was filed within the thirty-day delay allowed under Rule 4-3 of the Uniform Rules-Courts of Appeal for the filing of an application for supervisory writs." *Ramirez v. Evonir, LLC*, 2014-1095, p. 5 (La. App. 4 Cir. 4/9/15), 165 So.3d 260, 263.

We must also consider whether "the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation." *Lee v. Sapp*, 2017-0490, pp. 4-5 (La. App. 4 Cir. 12/6/17), 234 So.3d 122, 126 (internal citations omitted).

We find that the time requirement is met as to both the February 14, 2020 judgment and the October 9, 2020 judgment. After the trial court rendered its judgment denying Dr. Brenckle's motion to dismiss this action as abandoned on February 14, 2020, Dr. Brenckle took her devolutive appeal on March 2, 2020,

14

within the thirty-day delay for seeking a supervisory writ. Likewise, Ms. Jacobs filed her motion for appeal on October 21, 2020, less than thirty days after the trial court granted Dr. Brenckle's motion to strike Ms. Jacobs' designation of the record and denied Ms. Jacobs' motions to supplement the record on October 9, 2020. Accordingly, we find that the time requirement set forth in Rule 4-3 of the Uniform Rules-Courts of Appeal for the filing of an application for supervisory writs is met as to both judgments.

We also find that judicial efficiency dictates that we consider the merits of this matter at this time. Should the merits warrant reversal of the trial court's judgment denying Dr. Brenckle's motion to dismiss for abandonment, reversal would necessitate dismissal of the action and terminate the litigation between the parties. *See Fischer v. Chad Rogers, Cuvee, L.L.C.*, 2019-0337, p. 4 (La. App. 4 Cir. 10/9/19), 280 So.3d 1199, 1203 ("[R]eversal of the district court's decision would terminate the litigation by dismissing the lawsuit, such that a decision on the issue before us would further judicial efficiency.") Thus, we convert the consolidated appeals into applications for supervisory writs and grant the writs for purposes of considering the merits of the issues presented.

## REVIEW OF THE FEBRUARY 14, 2020 JUDGMENT

We first consider Dr. Brenckle's request for review of the trial court's February 14, 2020 judgment wherein the trial court denied her motion to dismiss for abandonment.

### Assignments of Error

Dr. Brenckle assigns four errors related to the trial court's denial of her motion to dismiss for abandonment:

15

(1) The trial court erred in ruling that Dr. Brenckle's out-of-court payments on the debt owed to Ms. Jacobs amounted to wavier of abandonment when Ms. Jacobs failed to enter proof of the payments into evidence;

(2) The trial court erred in ruling that Dr. Brenckle waived abandonment by making out-of-court payments when she had not been served with the lawsuit;

(3) The trial court erred in finding that Ms. Jacobs' filing multiple motions to set status conferences that were never held was sufficient to toll abandonment; and

(4) The trial court erred in finding that the case had not been abandoned when no activity appears in the record between December 28, 2009 and May 2, 2014.

We discuss Dr. Brenckle's assignments of error together as they are interrelated.

*Abandonment*

La. C.C.P. art. 561 provides that an action is abandoned "when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years, unless it is a succession proceeding[.]" Abandonment "is self-executing; it occurs automatically upon the passing of three years without a step being taken by either party, and it is effective without court order." *R.L. Lucien Tile Co. v. Solid Rock Co.*, 2016-0690, p. 7 (La. App. 4 Cir. 3/29/17), 215 So.3d 710, 714 (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 2000-3010, p. 6 (La. 5/15/01), 785 So.2d 779, 784). "Once abandonment has occurred, action by the plaintiff cannot breathe new life into the suit." *Id*. (citation omitted).

In *Clark*, the Louisiana Supreme Court held that La. C.C.P. art. 561 imposes three requirements on plaintiffs:

[P]laintiffs must take some "step" towards prosecution of their lawsuit. In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment,

16

or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step.

2000-3010, p. 6, 785 So.2d at 784.

*Clark* clarified that the principle of abandonment is not punitive. Rather it is a concept which balances two policy considerations: "on the one hand, the desire to see every litigant have his day in court, and not to lose same by some technical carelessness or unavoidable delay; on the other hand, the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription." *Id.*, 2000-3010, pp. 10-11, 785 So.2d at 787 (quoting *Sanders v. Luke*, 92 So.2d 156, 159 (La. App. 1st Cir. 1957)). "The latter policy consideration parallels those served by prescriptive statutes-promoting legal finality, barring stale claims, and preventing prejudice to defendants." *Id.*, 2000-3010, p. 11, 785 So.2d at 787 Accordingly, courts will look to see if an extended period of inactivity in the litigation establishes an inference that the party intends to abandon their claims. *Id.*, 2000-3010, p. 10, 785 So.2d at 786-87.

### *Standard of Review*

Whether a suit is abandoned is a legal question, meaning the appellate court must determine if the trial court's interpretative decision is correct. *R.L. Lucien Tile Co.*, 2016-0690, p. 5, 215 So.3d at 713 (citing *Olavarrieta v. St. Pierre*, 2004-1566, p. 3 (La. App. 4 Cir. 5/11/05), 902 So.2d 566, 568); *see also Faust v. Greater Lakeside Corp.*, 2003-0808, p. 3 (La. App. 4 Cir. 11/26/03), 861 So.2d 716, 718. The question of whether a step in the prosecution of a case has been

17

taken in the trial court within the statutory abandonment period is a question of fact, subject to manifest error standard of review on appeal. *Id.* (citing *Hutchison v. Seariver Mar., Inc.*, 2009-0410, p. 4 (La. App. 1 Cir. 9/11/09), 22 So.3d 989, 992; *Brown v. Kidney & Hypertension Assocs., L.L.P.*, 2008-0919, p. 7 (La. App. 1 Cir. 1/12/09), 5 So.3d 258, 264).

Thus, for an appellate court to reverse the fact finder's determination, it must review the record in its entirety and "(1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Id.* (citing *Salvant v. State*, 2005-2126, p. 5 (La. 7/6/06), 935 So.2d 646, 650).

### *Ms. Jacobs' Motions to Set Status Conferences Are Sufficient to Toll Abandonment*

Dr. Brenckle contends that Ms. Jacobs' multiple motions to set status conferences do not amount to "steps" in the prosecution of this matter that tolled abandonment because the status conferences were not held and because she had not been served with the lawsuit at the time Ms. Jacobs filed the motions. Dr. Brenckle argues that the filings of the motions alone do not constitute steps in the prosecution of Ms. Jacobs' case against Dr. Brenckle. Instead, Dr. Brenckle contends that Ms. Jacobs' motions to set status conferences can only amount to steps in the prosecution of a claim when the trial court actually holds the status conference. In support of this argument, Dr. Brenckle cites this Court's decision in *Heirs of Simoneaux v. B-P Amoco*, 2013-0760 (La. App. 4 Cir. 2/5/14), 131 So.3d 1128.

In *Heirs of Simoneaux*, the trial court dismissed a case as abandoned after the plaintiffs filed a motion to set status conference on August 23, 2011 (which

was scheduled for October 18, 2011), more than three years after a previous motion for status conference that was filed on March 26, 2008. This Court reversed the trial court's finding that the filing of the March 26, 2008 motion was the last date in the step of prosecution, noting that the parties participated in a telephone conference call on August 28, 2008. This Court found that the August 28, 2008 telephone conference was the last date in the step of prosecution and that the case was not abandoned due to the plaintiffs' August 23, 2011 motion to set status conference.

In the instant matter, Dr. Brenckle argues *Heirs of Simoneaux* stands for the proposition that a motion to set a status conference can only be considered a "step" in the prosecution of an action if the parties and the trial court actually participate in the conference. Because the conferences Ms. Jacobs requested here did not occur, Dr. Brenckle reasons Ms. Jacobs' motions alone cannot constitute steps in the prosecution here.

This is a misreading of *Heirs of Simoneaux*. In *Heirs of Simoneaux*, this Court found that, under the facts presented, the date the August 28, 2008 telephone conference was held—which was necessarily later than the filing date for the motion to set the conference—was the *last* (*i.e.* most recent or latest) step in the prosecution on which to start the clock for abandonment purposes. In fact, this Court held that the action in *Heirs of Simoneaux* was not abandoned, after the plaintiffs filed a motion to set a status conference (but had not actually held the conference) on August 23, 2011, five days shy of three full years after the August 28, 2008 telephone conference.

Contrary to Dr. Brenckle's assertions, *Heirs of Simoneaux* stands for the proposition that filing a motion to schedule a status conference (without actually holding the conference) is enough to toll abandonment, as Ms. Jacobs did here.

The First Circuit also considered whether the filing of a motion to set status conference is sufficient to toll abandonment in *Dendy v. City Nat'l Bank*, 2006-2436 (La. App. 1 Cir. 10/17/07), 977 So.2d 8. In *Dendy*, the First Circuit noted that "the intent and substance of a party's actions matter far more than technical compliance." *Id.*, 2006-2436, p. 9, 977 So.2d at 13 (quoting *Thibaut Oil Co., Inc. v. Holly*, 2006-0313, p. 5 (La. App. 1 Cir. 2/14/07), 961 So.2d 1170, 1172-73) (internal quotations omitted). The First Circuit found that, because the purpose of the *Dendy* plaintiff's motion to set status conference was to "hasten the matter to judgment by selecting deadlines for the parties to conclude all pretrial matters," the plaintiff's motion to set status conference was sufficient to toll abandonment. *Id.*, 2006-2436, p. 10, 977 So.2d at 13 (quoting *Hidalgo v. Catfish Queen P'ship in Commendam*, 2006-1531, p. 6 (La. App. 1 Cir. 5/4/07), 961 So.2d 434, 438) (internal quotations omitted).

Ms. Jacobs' motions to set status conferences are likewise attempts to hasten the matter to judgment because the motions specify that the purpose of the satus conferences is to have the trial court set pretrial deadlines and select a trial date. Thus, we reject Dr. Brenckle's argument that she needed to have been served with the lawsuit or that the status conferences needed to have been held in order for abandonment to have been tolled.

Even so, Dr. Brenckle notes that the record shows that there is a period of inactivity between December 28, 2009—the date Ms. Jacobs filed her preliminary witness and exhibit lists—and May 2, 2014—the date Ms. Jacobs filed her next

pleading in this matter, a motion to set status conference. Thus, Dr. Brenckle argues, the trial court erred in finding that the case is not abandoned because this period of inactivity lasted longer than three years, specifically from December 2009 to May 2014.

Ms. Jacobs counters that there was activity between December 2009 and May 2014, as she filed a motion to set status conference on April 24, 2012 with the trial court clerk's office, paid for it, and that it was sent to the trial judge's basket. Ms. Jacobs maintains that the motion was subsequently lost by the clerk's office, which is why the record does not contain this motion or any indication that the motion was filed. As a result, Ms. Jacobs attempted to introduce the "electronic record" of this matter—a screenshot purportedly of the Orleans Parish Clerk of Civil District Court's online database showing all pleadings filed in this case—into the record by filing her own designation of the record and, subsequently, by filing motions to supplement the record. Ms. Jacobs contends that the "electronic record" indicates that she filed a motion to set status conference on April 24, 2012. Dr. Brenckle argued at the trial court and before this Court that the "electronic record" Ms. Jacobs tried to introduce through her designation of record and her motions to supplement the record should not be considered because Ms. Jacobs failed to introduce the "electronic record" screenshot into evidence at the hearing on the motion to dismiss.

We find the "electronic record" immaterial to this Court's review of trial court's judgment denying Dr. Brenckle's motion to dismiss for abandonment. For the reasons set forth herein below, we find that Dr. Brenckle waived abandonment and that this waiver occurred during the alleged period of inactivity of which Dr. Brenckle complains. Thus, we do not consider the "electronic record" here.

### *Dr. Brenckle Waived Abandonment*

In her opposition to Dr. Brenckle's motion to dismiss this action as abandoned, Ms. Jacobs argued—and the trial court found—that Dr. Brenckle waived abandonment by making payments on the outstanding debt Dr. Brenckle owed Ms. Jacobs. The trial court found that the payments amounted to an acknowledgment of the debt that tolled the abandonment period and caused it to run anew. We agree.

In *Clark*, the Louisiana Supreme Court held that, despite the self-executing nature of abandonment and the requirement that any actions taken to toll abandonment must appear in the record, "[o]nly two categories of causes outside the record are permitted" to toll abandonment. 2000-3010, p. 7, 785 So.2d at 784. The first exception is based on "*contra non valentem* … [and] applies when failure to prosecute is caused by circumstances beyond the plaintiff's control." *Id.*, 2000-3010, p. 7, 785 So.2d at 785. The second exception, "a defense-oriented exception, based on acknowledgment[,] … applies when the defendant waives his right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned." *Id.*

The *Clark* court further explained that, because abandonment is "both historically and theoretically a form of liberative prescription that exists independent from the prescription that governs the underlying substantive claim[,]" abandonment is "subject to prescription-based exceptions, one of which is the waiver exception based on acknowledgment." *Id.*, 2000-3010, pp. 11-12, 785 So.2d at 787. *Clark* clarified that acknowledgement is an admission of liability that results in the interruption of prescription (or abandonment) and may be made on an informal basis. *Id.*, 2000-3010, p. 19, 785 So.2d at 792 (citing *Lima v. Schmidt*,

595 So.2d 624, 634 (La. 1992)). *Clark* also explained that a form of tacit acknowledgement occurs when a debtor performs acts of reparation or indemnity, such as making a payment, or otherwise lulls the creditor into believing that the debtor will not contest liability for the debt. *Id.*, 2000-3010, p. 20, 785 So.2d at 792.

Dr. Brenckle argues that this Court should reject the contention that her payments on the outstanding debt constitute a waiver of her right to claim abandonment because Ms. Jacobs neglected to enter the checks and deposit slips evidencing Dr. Brenckle's payments into evidence. Dr. Brenckle is correct that the checks and deposit slips were not officially entered into evidence at the hearing on the motion to dismiss. We find, however, that, as the *Clark* court reasoned, "[e]quity dictates recognizing the tender as an acknowledgment and thus within the waiver exception, which results in an interruption of abandonment and a recommencement of the abandonment period from the date of the tender." *Id.*, 2000-3010, p. 21, 785 So.2d at 793.

In making this finding, we agree with the *Clark* court's reasoning that, in taking steps acknowledging the debt, the defendant places themselves in the position where their post-trial exposure for the debt is limited. *Id.*, 2000-3010, p. 22, 785 So.2d at 793. The *Clark* court held that it would be unfair to allow a defendant to obtain protection for post-trial exposure by taking steps to acknowledge the debt, but then "disallow plaintiff to invoke the tender as a basis for avoiding dismissal on abandonment." *Id.* Importantly, *Clark* explained that, without giving the effect of disallowing dismissal on abandonment due to a defendant's tender, it would "defy the jurisprudential principle dictating that courts consider substance over form in determining abandonment issues to fail to

23

recognize the tender as an interruption of the abandonment period." *Id.*, 2000-3010, p. 21, 785 So.2d at 792-93.

Such is the case here. While Dr. Brenckle contends the evidence of her payments on the debt were not formally introduced into the record, she does not contest her liability for the debt owed to Ms. Jacobs. Dr. Brenckle also did not argue at the trial court or before this Court that she did not make the payments on the debt as Ms. Jacobs alleged. We find that it would be inequitable to allow Dr. Brenckle to make payments on the debt owed to Ms. Jacobs, which lulled Ms. Jacobs into believing Dr. Brenckle would not contest her liability on the debt (and thus lulled Ms. Jacobs into inaction on the lawsuit), without allowing Ms. Jacobs to claim those payments as a tacit acknowledgement which tolled abandonment. We also find that discounting the payments, especially in light of the fact that Dr. Brenckle does not dispute that she made the payments, would be considering form over substance in determining whether this matter was abandoned.

Additionally, we note that the record demonstrates that Dr. Brenckle made payments when Ms. Jacobs took steps in the prosecution of this case, which in turn lulled Ms. Jacobs into inaction. Once Ms. Jacobs filed her Petition/Claim for Attorney's Fees in December 2001, Dr. Brenckle made a payment on the debt in January 2002. Likewise, after Ms. Jacobs filed her March 2007 motion to set status conference, Dr. Brenckle again began making regular payments on (1) June 6, 2007; (2) July 6, 2007; (3) August 21, 2007; (4) September 24, 2007; (5) November 2, 2007; (6) January 8, 2008; and (7) May 22, 2008. Dr. Brenckle then made regular $2,000 payments in April, May, June, and July 2012. The record also indicates that, at some point while she was making regular $2,000 payments in May 2012, Dr. Brenckle indicated that she intended to make $2,000 monthly

payments for the next eight months. Therefore, we find the trial court did not commit manifest error in its determination that Dr. Brenckle made payments on the debt owed to Ms. Jacobs and that those payments tolled abandonment because there was never a three-year period of inactivity by one or both parties.

The record shows that, after Ms. Jacobs filed her Petition/Claim for Attorney's Fees on December 5, 2001, Ms. Jacobs filed a motion to set a status conference on September 10, 2004, less than three years later. Ms. Jacobs filed another motion to set status conference on December 10, 2004 and yet another motion to set a status conference less than three years after the December 2004 motion, on March 14, 2007.

The record shows that, thereafter, Dr. Brenckle made payments on the debt on (1) June 6, 2007; (2) July 6, 2007; (3) August 21, 2007; (4) September 24, 2007; (5) November 2, 2007; (6) January 8, 2008; (7) May 22, 2008; (8) April 15, 2012; (9) May 2, 2012; (10) June 5, 2012; (11) June 12, 2012; and (12) July 15, 2012. After Dr. Brenckle's last payment on July 15, 2012, the next step Ms. Jacobs took in the action was less than three years later, on May 14, 2014, when Ms. Jacobs filed a motion and order to set status conference, which we have already found were sufficient to toll prescription.

After the May 14, 2014 motion, Ms. Jacobs took other steps in prosecution of her case by sending two letters—on October 27, 2014 and October 1, 2015, respectively—to have the clerk's office re-issue service to Dr. Brenckle. Attempts to have the defendant served with the petition are sufficient steps in the prosecution of a lawsuit. *See Rixner v. Planned Parenthood Gulf Coast, Inc.*, 2018-0897 (La. App. 4 Cir. 4/24/19), 270 So.3d 733.

25

Thereafter, Dr. Brenckle was served with the lawsuit in 2016. After she was served in May 2016, Dr. Brenckle filed a motion for extension of time to file responsive pleadings, which was granted by the trial court. Thereafter, Ms. Jacobs took actions to obtain a preliminary default in September 2016, to confirm the preliminary default in July 2019 (less than three years later), to examine Dr. Brenckle as a judgment debtor in October 2019, and, finally, to defend Dr. Brenckle's motion to dismiss filed in January 2020. The record demonstrates that there was never a three-year period of inaction by one or both of the parties. Thus, based on the record before this Court, we find that the case was not abandoned because the three-year period of inaction provided in La. C.C.P. art. 561 did not elapse. Accordingly, we find the trial court did not abuse its discretion in denying Dr. Brenckle's motion for abandonment, and we deny the relief sought by Dr. Brenckle.

## REVIEW OF THE OCTOBER 9, 2020 JUDGMENT

We turn now to Ms. Jacobs' appeal of the trial court's October 9, 2020 judgment denying her motions to supplement the record and granting Dr. Brenckle's motion to strike same.

### Assignment of Error

Regarding the October 9, 2020 judgment, Ms. Jacobs assigns one error for review: that the trial court abused its discretion in denying her motions to supplement the record on appeal. Ms. Jacobs claims that this Court could not properly determine if she has, in fact, abandoned the proceedings without the documents Ms. Jacobs sought to have supplemented because the record that was transmitted to this Court according to Dr. Brenckle's designation does not accurately reflect the trial record.

26

## Standard of Review

As noted above, Ms. Jacobs made her motions to supplement the record pursuant to La. C.C.P. art. 2123, which allows "[a] record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record," to be corrected after the record is transmitted to the appellate court "by the parties by stipulation, by the trial court or by the order of the appellate court."

"Appellate courts have reviewed the trial court's correction of a record by applying an abuse of discretion standard." *St. Julian v. Wiltz*, 2009-323, p. 3 (La. App. 3 Cir. 10/7/09), 21 So.3d 449, 452 (citing *Diamond B Constr. Co., Inc. v. La. Dep't of Transp. & Dev.*, 2000-1583 (La. App. 3 Cir. 12/22/00), 780 So.2d 439).

## Ms. Jacobs' Motions to Supplement the Record

At the outset, we note that Ms. Jacobs' motions to supplement the record only requested that the record be supplemented with the items listed in her designation of the record filed on July 22, 2020. Additionally, the record shows that it was not until March 2, 2020, after the hearing on Dr. Brenckle's motion to dismiss the case as abandoned, that Ms. Jacobs filed a motion to have the trial court admit the exhibits she attached to her memorandum in opposition to the motion to dismiss. Ms. Jacobs did not introduce her exhibits into evidence at the hearing. Ms. Jacobs' motion to enter the exhibits into the record was denied by the trial court on July 14, 2020. Ms. Jacobs sought no review of this ruling. Thereafter, on July 22, 2020, Ms. Jacobs filed her own designation of the record for Dr. Brenckle's appeal, to which Dr. Brenckle responded by filing a motion to strike on July 26, 2020. On August 7 and 10, 2020, Ms. Jacobs also filed a motion and amended motion, respectively, to supplement the record.

27

The trial court denied Ms. Jacobs' motions to supplement the record (and granted Dr. Brenckle's motion to strike Ms. Jacobs' designation of the record), indicating that it believed Ms. Jacobs' motions to supplement the record were Ms. Jacobs' attempts to introduce evidence into the record that was not previously introduced. The trial court also found that Ms. Jacobs' designation of the record was untimely.

The time delay for filing a designation of record is governed by La. C.C.P. art. 2128, which provides:

> The form and content of the record on appeal shall be in accordance with the rules of the appellate court, except as provided in the constitution and as provided in Article 2128.1. However, **within three days, exclusive of holidays, after taking the appeal the appellant may designate in a writing filed with the trial court such portions of the record which he desires to constitute the record on appeal. Within five days, exclusive of holidays, after service of a copy of this designation on the other party, that party may also designate in a writing filed with the trial court such other portions of the record as he considers necessary.** In such cases **the clerk shall prepare the record on appeal as so directed**, but **a party or the trial court may cause to be filed thereafter any omitted portion of the record** as a supplemental record. When no designation is made, the record shall be a transcript of all the proceedings as well as all documents filed in the trial court.

(Emphasis added).

By the plain language of La. C.C.P. art. 2128, Ms. Jacobs' designation of the record was untimely. After she received Dr. Brenckle's February 27, 2020 designation of record, Ms. Jacobs had five days, exclusive of legal holidays, to file her own designation of record. Ms. Jacobs has not argued that she did not receive the designation of record in a timely manner. In fact, Ms. Jacobs' March 2, 2020 filing references the designation of record, indicating that Ms. Jacobs had received the designation of record when she filed her March 2, 2020 motion. Therefore, Ms. Jacobs had, at the latest, until March 9, 2020 to file her designation of record. Over

28

four months later, Ms. Jacobs filed her designation of the record on July 22, 2020. Ms. Jacobs' July 22, 2020 designation of the record was, therefore, untimely. Likewise, Ms. Jacobs' August 2020 motions to supplement the record with the documents listed in an untimely-filed designation of record are also untimely attempts at designating the record.

Because Ms. Jacobs' designation of record was untimely, and the motions to supplement the record requested that the record be supplemented with the items listed in Ms. Jacobs' designation of record, we find that it was not an abuse of the trial court's discretion to deny the motions to supplement the record and grant Dr. Brenckle's motion to strike. Accordingly, we deny the relief sought by Ms. Jacobs.

## DECREE

For the foregoing reasons, we find that the trial court's February 14, 2020 and October 9, 2020 judgments are not final judgments, but we convert the judgments to applications for supervisory writs, grant the writs, and deny relief.

**CONSOLIDATED APPEALS CONVERTED TO WRITS; WRITS GRANTED; RELIEF DENIED**