977 So.2d 8 (2007)
James L. DENDY, Executor of the Succession of Bernard R. Kannon, Sr.
v.
CITY NATIONAL BANK and Jimmy Johnston.
No. 2006 CA 2436.
Court of Appeal of Louisiana, First Circuit.
October 17, 2007.
*9 Dennis R. Whalen, Baton Rouge, Louisiana, for Plaintiff/Appellant, James L. Dendy, Executor.
Rebecca Kittok Wisbar, Baton Rouge, Louisiana, for Defendant/Appellee, JPMorgan Chase Bank, N.A.
Stephen F. Chiccarelli, Baton Rouge, Louisiana, for Defendant/Appellee, Regions Bank.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
A succession executor appeals a judgment recognizing his civil action against a bank as abandoned and formally dismissing the action as of the date of abandonment. For the following reasons, we reverse the judgment.

FACTS AND PROCEDURAL HISTORY
The plaintiff, James L. Dendy, is the executor of the succession of Bernard R. Kannon, Sr. In that capacity, he filed two separate lawsuits in the 19th Judicial District Court for the Parish of East Baton Rouge on January 5, 1999, seeking reimbursement of the amounts of checks cashed by Jimmy Johnston, who allegedly forged the payees' endorsements. The two actions relate to the negotiation of different checks through different banks. The first action, assigned civil case number 956,915, named as defendants Jimmy Johnston and Bank One, Louisiana, N.A. (formerly City National Bank and now JPMorgan Chase Bank, N.A.). Bank One, Louisiana, N.A. (Bank One) answered the petition in the first action, denying its liability. Mr. Johnston did not answer the petition, and a preliminary judgment by default was entered against him in the first action on July 6, 1999.
The second action, assigned civil case number 956,916, also named Mr. Johnston as a defendant, as well as Regions Bank (Regions). Regions filed a combined answer, cross-claim, and third-party demand. One third-party defendant, Bank of West Baton Rouge, filed its answer to the third-party demand on May 19, 1999.
On October 11, 2000, plaintiff filed a motion to consolidate his two actions for trial. The motion bore the captions of both actions. The trial court ordered a contradictory hearing on the motion for December 4, 2000. In the meantime, on November 16, 2000, the other third-party defendant in the second action, Snapy's, Inc., filed its answer to Regions's third-party demand, combined with its own third-party demand against plaintiff. That pleading bore the captions of both actions, but was filed only in the record of the first action. On December 4, 2000, plaintiff filed his answer to the third-party demand of Snapy's, Inc. in the record of the second action. Although the trial court's minute entry for December 4, 2000, reflects that plaintiffs motion to consolidate the actions was granted that day, no order was signed, and for some reason, plaintiff filed a second motion to consolidate the actions on June 11, 2002. That motion was heard on August 12, 2002 and granted, and the trial *10 court finally signed a judgment of consolidation on August 21, 2002.
Subsequent to the order of consolidation, on September 9, 2002, Bank One filed an amended answer in the first action, combined with a cross-claim against Mr. Johnston and a third-party demand against the Bank of West Baton Rouge and Snapy's. The record shows, and the parties concede, that Bank One's filing of that combined pleading was the last formal step taken in the prosecution of the first action until November 23, 2005.
On August 29, 2005, southeastern Louisiana was struck by Hurricane Katrina, which devastated the New Orleans area. On September 6, 2005, Governor Kathleen Babineaux Blanco issued Executive Order KBB 2005-32, following her earlier proclamation of a state of emergency for the entire state. Executive Order KBB 2005-32 ordered that "[a]ll deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts" were suspended "until at least September 25, 2005," and that the order applied retroactively from August 29, 2005. By Executive Order KBB 2005-48, issued on September 23, 2005, Governor Blanco extended the suspension of all deadlines in legal proceedings until October 25, 2005, again applicable statewide.
The disastrous effects of Hurricane Katrina were followed by those of Hurricane Rita, which made landfall on September 24, 2005, devastating the southwestern area of the state. On October 19, 2005, Governor Blanco issued Executive Order KBB 2005-67, extending the suspension of "[l]iberative prescriptive and peremptive periods" statewide until November 25, 2005. However, the suspension of all other deadlines in legal proceedings was to end on October 25, 2005, as provided in Executive Order KBB 2005-48, except for those parishes affected by Hurricane Rita.[1]
The legislature was called into special session from November 6 to November 18, 2005, and enacted legislation ratifying the governor's action in issuing the executive orders and further extending the suspension of prescriptive and peremptive periods from August 26, 2005 through January 3, 2006.[2]
On November 23, 2005, plaintiff filed a request for "a status conference in these consolidated cases" in the first action, for the express purposes of "settling pleadings, fixing discovery deadlines, fixing a pre-trial conference, and setting a trial date." The request bore the suit captions of both consolidated cases, named the parties in both cases and their respective counsel, but no order was submitted with the request. There is no indication in the record that the trial court took any action in response to the request.
On February 9, 2006, Bank One filed an ex parte motion in the first action, seeking an order of dismissal on the grounds of abandonment. In its motion, Bank One contended that no action was taken in the prosecution or defense of the first action from September 9, 2002 through November 28, 2005. On February 17, 2006, the trial court assigned the motion for hearing on April 3, 2006, on a contradictory basis.
On March 15, 2006, Regions filed an ex parte motion to dismiss both consolidated actions, contending that no steps in the *11 prosecution or defense had been taken since November 27, 2002, when plaintiff served responses to discovery propounded by Regions in the second action. On March 21, 2006, the trial court signed an order denying Regions's motion, reciting the fact that plaintiff filed his request for a status conference on November 23, 2005.
On April 3, 2006, the trial court heard Bank One's motion to recognize abandonment in the first action. It ruled in favor of Bank One, assigning oral reasons. Its judgment granting Bank One's motion was signed May 1,2006.
Plaintiff instituted a devolutive appeal. This court issued a show cause order on January 25, 2007, ordering the parties to show cause by briefs why the appeal should not be dismissed, on the grounds that the judgment did not contain appropriate decretal language of formal dismissal, as required by La. C.C.P. art. 561(A)(2). On March 6, 2007, we issued an interim order, ordering the remand of the case for the limited purpose of having the trial court sign a corrected judgment dismissing the first action as of the date of abandonment. The corrected judgment was signed on April 23, 2007, dismissing the first action as of November 22, 2005. Written findings of fact and reasons for judgment were issued on May 1, 2007.

ASSIGNMENTS OF ERROR
Plaintiff contends that the trial court erred in finding that the filing of his request for a status conference was not a step in the prosecution of the first action, sufficient to interrupt abandonment, and in failing to apply the doctrine of contra non valentem to defeat the claim of abandonment.

PRELIMINARY PROCEDURAL CONSIDERATIONS
Consolidation of actions pursuant to La. C.C.P. art. 1561 is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity. Howard v. Hercules-Gallion Co., 417 So.2d 508, 511 (La.App. 1st Cir.1982). Procedural rights peculiar to one case are not rendered applicable to a companion case by the mere fact of consolidation; each case must stand on its own merits. Id. The filing of a pleading or motion in one of several consolidated cases does not procedurally affect the others. In re Miller, 95-1051, p. 5 (La.App. 1st Cir. 12/15/95), 665 So.2d 774, 776, writ denied, 96-0166 (La.2/9/96), 667 So.2d 541.
Because consolidation of actions for trial does not procedurally merge the actions for all purposes, the mere fact that a pleading, a discovery response, or correspondence bears the suit captions of the consolidated actions does not render the pleading or document applicable to all of the consolidated actions. The substance and purpose of such a pleading, the cause of action to which it relates, the parties actually affected, and the particular suit record or records in which it was filed must be considered to determine if it applies to only one or more of the consolidated actions. This issue is particularly significant as it relates to abandonment under La. C.C.P. art. 561. In some circumstances, a pleading or procedural step may clearly apply to all of several actions consolidated for trial, if it was intended to hasten all of those actions to judgment in a common trial. See Reed v. Pittman, 257 La. 389, 398-99, 242 So.2d 554, 557-58 (La.1970).
This appeal was taken from the judgment in the first action only. Regions has submitted briefs in its purported capacity as an appellee in this appeal, but Regions is not a party to the first action. As *12 plaintiff correctly emphasizes, Regions did not seek review of the order denying its ex parte motion to dismiss the consolidated second action, so that order is not properly before us. Accordingly, we will not indulge in discussion of the merits of that order or the procedural status of the second action.[3]

ANALYSIS
Louisiana Code of Civil Procedure article 561(A) provides, in pertinent part:
A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years
(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment
(3) A motion to set aside a dismissal may be made only within thirty days of the date of the sheriffs service of the order of dismissal. If the trial court denies a timely motion to set aside the dismissal, the clerk of court shall give notice of the order of denial pursuant to Article 1913(A) and shall file a certificate pursuant to Article 1913(D).
(4) An appeal of an order of dismissal may be taken only within sixty days of the date of the sheriffs service of the order of dismissal. An appeal of an order of denial may be taken only within sixty days of the date of the clerk's mailing of the order of denial.
A "step" in the prosecution or defense of an action has been defined as "taking formal action before the court," appearing in the record of the suit, that "is intended to hasten the suit toward judgment," with the exception of formal discovery that need not appear in the record. Clark v. State Farm Mut. Auto. Ins. Co., 00-3010, p. 6 (La.5/15/01), 785 So.2d 779, 784. Louisiana Code of Civil Procedure article 561 is to be liberally construed in favor of maintaining a plaintiffs suit. Id., 00-3010 at p. 8, 785 So.2d at 784.
The trial court's written reasons for judgment of May 1, 2007 essentially track its earlier oral reasons for judgment issued on April 3, 2006. The trial court accepted Bank One's position that the suspension of the abandonment period began on August 29, 2005, the effective date of the suspension of all deadlines in legal proceedings in Executive Order KBB 2005-32, and ended on October 25, 2005, as provided for all deadlines other than liberative prescription and peremption in Executive Order KBB 2005-67. Bank One contended that the last step taken in the first action occurred on September 9, 2002, and that discovery propounded by plaintiff on September 26, 2002 was not properly served, making it informal discovery insufficient to constitute a step in the action's prosecution. It further contended that even if the latter date was accepted as the commencement date of the abandonment period, the suspension of the deadline only served to give plaintiff twenty-nine additional days from October 25, 2005, or until November 22, 2005, to *13 interrupt the accrual of abandonment. In its oral reasons, the trial court found that plaintiffs request for a status conference did not constitute a step in the prosecution of the action, without expressly stating its finding as to the commencement date of abandonment. In its corrected judgment and later written reasons, however, the trial court additionally held that abandonment accrued on November 22, 2005, one day prior to the filing of plaintiff's request.
That the requested conference was referred to as a "status conference" in the request is not determinative of the issue of its character for purposes of abandonment. In determining the issue of abandonment, "the intent and substance of a party's actions matter far more than technical compliance." Thibaut Oil Co., Inc. v. Holly, 06-0313, p. 5 (La.App. 1st Cir.2/14/07), 961 So.2d 1170, 1172-73. Form or caption should not prevail over substance. See Clark, 00-3010 at p. 9, 785 So.2d at 786. By means of his request filed in the record of the first action, plaintiffs counsel sought a conference with the court and other counsel in both consolidated actions for the purposes of "settling pleadings, fixing discovery deadlines, fixing a pre-trial conference, and setting a trial date." The first three listed items clearly fall within the purposes of a scheduling conference authorized by La. C.C.P. art. 1551(A).[4] Bank One argues that a "status conference" would "not require the court to implement any sort of scheduling order requiring the parties to do certain things before trial as would a pre-trial conference/order." (Emphasis supplied.) While this may technically be true, plaintiffs intent and the substantive purpose of the requested conference are more relevant than subtle distinctions in the nomenclature or finality of the conference.
This court was recently confronted with the issue of "whether a proper request for a status and/or scheduling conference is . . . sufficient to interrupt the three-year period for abandonment." Hidalgo v. Catfish Queen P'ship in Commendam, 06-1531, p. 5 (La.App. 1st Cir.5/4/07), 961 So.2d 434, 437. The case arose in the same trial court as that of the present action. We held that the filing of requests by letter for "scheduling conferences" were "procedurally proper and timely," and comported with La. C.C.P. art. 1551 and Rule 9.14 of the Louisiana Rules for District Courts. That the trial court's local rule technically requires a formal pretrial conference to actually set a trial date, as opposed to a motion to set for trial or a "scheduling" or "status" conference, is not determinative on this point. Here, as in Hidalgo, "the ultimate purpose of the conference was to hasten the matter to judgment by selecting deadlines for the parties to conclude all pretrial matters." Id., 06-1531 at p. 6, 961 So.2d at 438. The trial court erred in ruling that plaintiffs request for a status conference was not a step in the prosecution of his action. The remaining question is whether that step was timely.
Louisiana Revised Statutes 9:5822(A) provides:

All prescriptions, including liberative, acquisitive, and the prescription of nonuse, and all peremptive periods shall be subject to a limited suspension and/or extension during the time period of August 26, 2005, through January 3, 2006; *14 however, the suspension and/or extension of these periods shall be limited and shall apply only if these periods would have otherwise lapsed during the time period of August 26, 2005, through January 3, 2006. This limited suspension and/or extension shall terminate on January 3, 2006, and any right, claim, or action which would have expired during the time period of August 26, 2005, through January 3, 2006, shall lapse on January 4, 2006. (Emphasis supplied.)
This statute operated to extend prescriptive and peremptive periods only. Other legal deadlines affected by Hurricanes Katrina and Rita are governed by La. R.S. 9:5823, which provides:
A. All deadlines in legal proceedings, which were suspended by Executive Orders KBB 2005-32, 48, and 67, shall be subject to a limited suspension and/or extension during the time period of November 25, 2005, through January 3, 2006; however, the suspension and/or extension of these deadlines shall be limited and shall apply only if these deadlines would have otherwise lapsed during the time period of November 25, 2005, through January 3, 2006. This limited suspension and/or extension shall terminate on January 3, 2006, and any deadline in legal proceedings which would have expired during the time period of November 25, 2005, through January 3, 2006, shall lapse on January 4, 2006.
B. Notwithstanding the provisions of Subsection A and to the extent that deadlines in legal proceedings were not suspended by Executive Orders KBB 2005-48 and 67, if a deadline in a legal proceeding lapsed during the time period of October 25, 2005, through November 25, 2005, a party shall have the right to seek an extension or suspension of that deadline by contradictory motion or declaratory judgment. The party seeking the extension shall bear the burden of proving that either the party or his attorney was adversely affected by Hurricane Katrina or Rita and but for the catastrophic effects of Hurricane Katrina or Rita, the legal deadline would have been timely met. For good cause shown, the court shall extend the deadline in the legal proceeding, but in no instance shall the extension be later than January 3, 2006. (Emphasis supplied.)
The resolution of this matter ultimately hinges upon whether the governor's executive orders and the corresponding legislation extending prescriptive and peremptive periods apply to abandonment, or whether the three-year abandonment period is properly considered a legal deadline other than a prescriptive or peremptive period. If the former, abandonment was interrupted by the filing of the request for a status conference. If the latter, abandonment accrued during the one-month suspension "gap" of October 25 through November 25, 2005. See La. R.S. 9:5823(B) and Executive Order KBB 2005-67, § 1(B).
Because the Louisiana Civil Code does not provide guidance on how to determine whether a particular time limitation is prescriptive or peremptive, the supreme court "has resorted to an exploration of the legislative intent and public policy underlying a particular time limitation." State of La., Div. of Admin, v. Mclnnis Bros. Constr., 97-0742, p. 4 (La.10/21/97), 701 So.2d 937, 940. Thus, courts look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption, or renunciation of that time limit to determine its nature as prescriptive or peremptive. State Bd. of Ethics v. Ourso, 02-1978, p. 5 (La.4/9/03), 842 So.2d 346, 349. The same rationale should apply in *15 determining whether abandonment falls into either category, or neither.
Abandonment is essentially self-operative; it occurs automatically upon the passing of three years without a step being taken by either party, and it is effective without court order. La. C.C.P. art. 561(A)(2). In those respects, it more closely resembles peremption rather than prescription, which must be affirmatively pleaded as a defense and cannot be noticed by a court on its own motion. See La. C.C.P. arts. 927(B) and 1005. But unlike peremption, the right to plead abandonment can be waived by a defendant, as the defense of prescription can be waived by the failure to affirmatively plead it or through acknowledgment. It has also been held that the doctrine of contra non valentem may apply to defeat a claim of abandonment, as it may also defeat a claim of prescription. See Clark, 00-3010 at p. 7, 785 So.2d at 784-85; Akyar v. Lee, 99-806, p. 4 (La.App. 5th Cir.1/25/00), 751 So.2d 411, 413, writ denied, 00-0616 (La.4/20/00), 760 So.2d 348. In these respects, then, it more closely resembles prescription than peremption.
Fortunately, the supreme court has provided guidance on the issue. Clark unequivocally recognized that "[abandonment is both historically and theoretically a form of liberative prescription that exists independent from the prescription that governs the underlying substantive claim." Clark, 00-3010 at p. 11, 785 So.2d at 787. (Emphasis supplied.) It further observed that "[t]he historical and theoretical nature of abandonment as a species of prescription renders it appropriate to consider prescriptive principles in analyzing res nova abandonment issues. . . ." Clark, 00-3010 at p. 19, 785 So.2d at 791. The issue before us is res nova.
Since the legislature intended that even the strict time limitation of peremption should be suspended pursuant to La. R.S. 9:5822(A) due to the 2005 hurricane crisis, it is logical to conclude that it also intended that abandonment, a species of the less-strict time limitation of prescription, should likewise be suspended. We are also guided by the legislature's express directive that La. R.S. 9:5821, et seq., "shall be liberally construed" to effect the purposes stated. Accordingly, we hold that Executive Orders KBB 2005-32, 2005-48, and 2005-67 and La. R.S. 9:5822(A) apply to abandonment as well as to other forms of liberative prescription.
The abandonment period in this case "would have otherwise lapsed" on September 9 (or, alternatively, September 26), 2005 ("during the time period of August 26, 2005, through January 3, 2006"). See La. R.S. 9:5822(A). It was therefore suspended "through January 3, 2006" and "lapse[d] on January 4, 2006." Id. Plaintiffs request for a status conference on November 23, 2005 was therefore timely.
In summary, we hold that the abandonment period that would have ordinarily accrued on September 9, 2005 was statutorily suspended from August 26, 2005 through January 3, 2006, and that the filing of plaintiff's request for a status conference on November 23, 2005, given its express purposes, constituted a step in the prosecution of the action, sufficient to interrupt abandonment. The judgment of the trial court is reversed and the case is remanded for further proceedings. All costs of this appeal are assessed to the defendant-appellee, JPMorgan Chase Bank, N.A. (formerly Bank One, Louisiana, N.A.).
REVERSED AND REMANDED.
NOTES
[1] Executive Order KBB 2005-67 provided that deadlines in legal proceedings in the parishes of Calcasieu, Cameron, Jefferson Davis, and Vermilion were suspended until November 25, 2005.
[2] See La. R.S. 9:5821(B) and 9:5822(A), enacted by Acts 2005, 1st Ex.Sess., No. 6, § 1, effective November 23, 2005. The statutes were expressly declared to be applicable "retroactively as well as prospectively." Acts 2005, 1st Ex.Sess., No. 6, § 4.
[3] The denial of Regions's motion in the second consolidated action was an interlocutory judgment and not appealable. Not being a party to the first action, Regions likewise cannot properly be considered an appellee in this appeal. To the extent that Regions's brief discusses issues relating to the judgment in the first action, it might conceivably be construed as an amicus curiae brief. However, as Regions did not move for leave to submit its brief, we also will not consider it in that respect. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.11.
[4] Louisiana Code of Civil Procedure article 1551 authorizes a trial court to set "conferences" of counsel for the purposes of considering "[t]he necessity or desirability of amendments to the pleadings"; "[t]he control and scheduling of discovery"; and "other matters as may aid in the disposition of the action." The article specifically authorizes the trial court in its discretion to conduct multiple conferences.