# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-670 consolidated with 25-671 & 25-672

**CHP LAFAYETTE INTERESTS, LLC**

**VERSUS**

**SOLOMAN'S REAL ESTATE, LLC, ET AL.**

*consolidated with*

**EVAN EDMONDSON, IN HIS CAPACITY AS MEMBER OF SOLOMON'S, LLC**

**VERSUS**

**JEFF M. PENN, IN HIS CAPACITY AS MEMBER OF SOLOMON'S LLC, AND CHANDA PENN, INDIVIDUALLY**

*consolidated with*

**SOLOMON'S REAL ESTATE, LLC**

**VERSUS**

**EVAN EDMONDSON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20164619 C/W
NO. 20160598 C/W NO. 20161379
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Charles G. Fitzgerald, Judges.

**AFFIRMED.**

**R. Michael Moity, Jr.**
**The Moity Law Firm**
**340 Weeks Street**
**New Iberia, LA 70560**
**(337) 365-5529**
**COUNSEL FOR APPELLANT:**
**Evan Edmondson**

**Emile Joseph, Jr.**
**David J. Ayo**
**Mark S. Owens**
**Allen and Gooch**
**Post Office Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1240**
**COUNSEL FOR APPELLEES:**
**Jefferey M. Penn**
**Chanda Penn**
**Solomon's Real Estate, LLC**

**John A. Mouton, III**
**Law Offices of John A. Mouton, III**
**Post Office Box 82438**
**Lafayette, LA 70598-2438**
**(337) 988-6499**
**COUNSEL FOR APPELLEES:**
**CHP Lafayette Interests, LLC**

**Charles Mouton**
**Jared L. Foti**
**Mahotook & Lafleur, LLC**
**Post Office Box 3089**
**Lafayette, LA 70502**
**(337) 266-2189**
**COUNSEL FOR APPELLEES:**
**CHP Lafayette Interests, LLC**

**PERRET, Judge.**

This appeal is taken from a judgment declaring two of three consolidated docket numbers abandoned and dismissing them without prejudice, and from a denial of Appellant's subsequent Motion for New Trial. After review, we affirm the trial court's judgments.

**FACTS AND PROCEDURAL HISTORY**

Evan Edmondson ("Mr. Edmondson") and Jefferey Penn formed Solomon's Real Estate, LLC ("Solomon's"), with the intention of developing a piece of real estate in Lafayette, Louisiana. After financing was obtained, Solomon's purchased the property and hired a contractor to begin construction. However, the contractor was ultimately released, which caused MC Bank and Trust Company ("MC Bank") to discontinue Solomon's line of credit. Solomon's subsequently defaulted on its loan. From this endeavor, the three lawsuits involved in this appeal were filed.

On February 2, 2016, Mr. Edmondson filed suit against Jefferey Penn, as a member of Solomon's, and against Jefferey Penn's wife, Chanda Penn, individually, the suit bearing docket number 2016-0598-G. This petition alleged the breach of fiduciary duties owed by Jefferey Penn and Chanda Penn to Mr. Edmondson.

On March 15, 2016, Solomon's filed suit against Mr. Edmondson claiming several fiduciary duty breaches by Mr. Edmondson, failure to make capital contribution, and a request for accounting. This suit was docketed with number 2016-1379-D.

Meanwhile, CHP Lafayette Interests ("CHP") was formed with the sole member being Charles Penn, Jefferey Penn's father. CHP became the holder of two promissory notes that Solomon's executed in favor of MC Bank. Both Mr. Edmonson and Jefferey Penn secured payment of any indebtedness by Solomon's

arising under the notes by virtue of a commercial guaranty. The commercial guaranty granted CHP as owner/holder of the notes the contractual right to accelerate any unpaid balance due under the notes, which it did when Solomon's defaulted under the notes. On August 31, 2016, CHP filed a Petition for Executory Process against Solomon's, Mr. Edmondson, individually, and Jefferey Penn, individually, seeking to seize and sell the immovable property. That suit bears docket number 2016-4619-D.

CHP proceeded to a sheriff's sale of the property. CHP also reserved its right to seek a deficiency judgment action for any remaining sums due after said sale. In May 2017, under docket 2016-4619, CHP filed a Petition for Deficiency Judgment against Solomon's, Jefferey Penn, and Mr. Edmondson, seeking the balance owed CHP following the sheriff's sale.

On August 10, 2018, Mr. Edmondson filed an Answer, Reconventional Demand, Cross Claim, and Third Party Demand in docket number 2016-4619, naming Jefferey Penn as "defendant in cross claim," and Chanda Penn as "defendant in third party." CHP was named as defendant in reconvention. Mr. Edmondson averred that any amounts due under the notes at issue "arise from the acts or omissions of JEFF PENN . . . and CHANDRA [sic] PENN" and both are "responsible for any amounts due as well as any damages payable to" Mr. Edmondson. In his reconventional demand against CHP, Mr. Edmondson alleged CHP, Jefferey Penn, and Chanda Penn "conspired together to intentionally and willfully cause damage to" Mr. Edmondson. Jefferey Penn, as the cross claim defendant, and Chanda Penn, as the third party defendant, filed declinatory exceptions of lis pendens and peremptory exceptions of no cause of action. The trial court, in the minutes for May 3, 2019, stated:

2

The Court finds that the Exceptors, Jeffery and Chanda Penn have not met their burden of showing that the defendant in rule, Mr. Edmondson failed to state a cause of action in his Reconventional Demand. . . . Hence, the exception of no cause of action is denied, without prejudice.

The Court finds that there is another suit (a case filed prior to the one at bar) pending in Division "G" of the Fifteenth Judicial District Court, involving the same occurrence, and between the same parties in the same capacities. Since the February 2, 2016 filing of the initial Petition for Damages (Docket # 20160598 "G") this same matter has always involved the same parties, i.e. Evan Edmondson, in his individual capacity as Member of Solomon's Real Estate, LLC, Jeff M. Penn, in his capacity as Member of Solomon's Real Estate, LLC, and Chanda Penn, individually. Thus, in accordance with La. Code of Civil Procedure Article 531, the declinatory exception of lis pendens is sustained and the matter before this court is dismissed, without prejudice."[1]

On May 23, 2019, the trial court signed a judgment granting the exception of lis pendens and deeming the exception of no cause of action moot. The trial court dismissed the cross claim against Jefferey Penn and the third party claim against Chanda Penn, with prejudice, from docket number 2016-4619.

At this point, docket 2016-4619, which began as CHP's effort to seize and sell Solomon's immovable property, involved CHP's deficiency judgment and Mr. Edmondson's reconventional demand alleging a conspiracy between CHP and the Penns to intentionally cause him harm.

On August 13, 2019, a second motion to consolidate docket numbers 2016-4619 and 2016-0598 was filed, the first having been filed and denied in 2018. According to the court minutes, this motion was granted in court on October 21, 2019, but a judgment was not immediately signed. The judgment, signed on January

---

[1] This is different than the judgment, which orders the claims dismissed *with* prejudice.

3

13, 2020, consolidated all three docket numbers, 2016-4619, 2016-1379, and 2016-0598.[2]

On June 1, 2020, the minutes indicate that a motion for summary judgment filed on behalf of the Penns and a motion for summary judgment filed by CHP was heard. It appears the Penns sought summary judgment dismissing Mr. Edmondson's claims against them made in 2016-0598, claims based on an alleged breach of fiduciary duty.[3] As to that motion, the trial court stated at the hearing that it would "deny the motion . . . because I think there does exist a genuine issue of material fact as to where there was a breach of fiduciary duty." Meanwhile, CHP sought to dismiss Mr. Edmondson's reconventional demand and sought summary judgment against Mr. Edmondson on its deficiency judgment. Summary judgment was granted as to Chanda Penn individually. The claims by Mr. Edmondson against Jefferey Penn were allowed to proceed. CHP's motion for summary judgment was also granted as to Mr. Edmondson's claims against it. Separate judgments, one for the Penns and one for CHP, were signed on June 3, 2020, and the Notice of Signing of Judgment on the summary judgment occurred on June 9, 2020. Thereafter, summary judgment regarding CHP's main demand for a deficiency judgment was signed on July 1, 2020, in favor of CHP.[4]

---

[2] We note that the motion to consolidate only requests the consolidation of docket numbers 2016-4619 and 2016-0598.

[3] The appellate records contain the transcript from this hearing, but not the motion for summary judgment filed by the Penns.

[4] A Notice of Appeal was filed by Mr. Edmondson regarding two judgments. The first granted CHP's motion for summary judgment and dismissed Mr. Edmondson's claims against CHP. The second was summary judgment granting CHP's deficiency judgment. No judgment regarding 2016-0598 and the Penns are included in the notice.

Thereafter all activity took place in docket number 2016-4619, wherein issues arose with a petition for nullity and subsequent motion for summary judgment between Mr. Edmondson and CHP.[5] In fact, the records designated on appeal for docket numbers 2016-0598 and 2016-1379 do not contain any further pleadings until the Ex Parte Motion to Dismiss on Grounds of Abandonment with Incorporated Memorandum in Support filed on February 21, 2025.

In 2024, there was more activity pertaining to the July 1, 2020 summary judgment regarding CHP's deficiency petition, Mr. Edmondson's 2022 Petition for Nullity and Sanctions, and another motion for summary judgment filed by CHP seeking to dismiss Mr. Edmondson's petition for nullity. All issues involved docket number 2016-4619. CHP's motion for summary judgment was granted, and Mr. Edmondson's nullity action was dismissed on November 7, 2024. The November 7, 2024 Judgment is now the focus of a companion case on appeal with this court, appellate docket number 2025-373.

The next occurrence, according to the appellate record, is on February 21, 2025, when the Penns filed their Ex Parte Motion to Dismiss on Grounds of Abandonment with Incorporated Memorandum in Support seeking to dismiss docket numbers 2016-0598 and 2016-1379 as abandoned. Mr. Edmondson filed a Motion to Strike Ex Parte Motion to Dismiss Judgment and Sanctions.

On April 7, 2025, the court heard Mr. Edmondson's motion to strike ex parte motion. After receiving the evidence introduced, which consisted of the Penns' ex

---

[5] Although the minutes indicate some activity took place under docket number 2016-0598, a thorough reading of those minutes show that the activity was in fact pertaining to docket number 2016-4619. This is in line with the trial court's policy to file documents under the lead case after consolidation. Once consolidated, the lead case is "the lower docket number, being the docket number of the suit that was first filed[.]" Affidavit of Taylar Rogers, Deputy Clerk of Court for the Parish of Lafayette.

parte motion to dismiss with memorandum and attachments, the Penns' opposition to Mr. Edmondson's motion to strike, and "Edmondson-1-copy of email," the trial court denied Mr. Edmondson's motion for the oral reasons stated and assessed costs to Mr. Edmondson. The judgment was rendered and signed in open court.

Mr. Edmondson filed a Motion for New Trial on April 15, 2025, which was denied. This appeal followed.[6]

On appeal, Mr. Edmondson assigns two assignments of error:

> 1.  The District Court abused its discretion by granting an ex parte motion (later set for hearing) dismissing Appellant's matter as abandoned when the attorney for Appellee made a court appearance on behalf of his client within[] three (3) year period envisioned by [La.Code Civ.P.] Art. 561.

> 2.  The District Court abused its discretion by granting an ex parte motion (later set for hearing) dismissing Appellant's matter as abandoned because of 'technical' non compliance with [La.Code Civ.P.] Art. 561.

**STANDARD OF REVIEW:**

On appellate review, this court reviews whether a party has taken a step in the prosecution of a case under the manifest error standard, as it is a question of fact. However, whether that step precludes abandonment is reviewed de novo as a question of law. *Gravlee v. Gravlee*, 11-509 (La.App. 3 Cir. 12/7/11), 79 So.3d 1169.

**DISCUSSION:**

*Mr. Edmondson's Argument:*

On appeal, Mr. Edmondson asks this court "[i]f a[n] Appellee in a consolidated group of cases makes a court appearance in defense or prosecution

---

[6] Although Edmondson's Motion and Order for Appeal states he "desires an [appeal] from the final judgments rendered in this action[,]" he assigns no errors and makes no arguments regarding the denial of his Motion for New Trial.

during a three (3) year period, can they move to have Appellant's matter dismissed?" Mr. Edmondson argues that there was not a three-year period of inactivity or period where the parties "did not engage in the prosecution or defense of the consolidated matter." He admits "much" of the history of these cases "were in litigation filed by and against CHP with an understanding that should the deficiency judgment be acquired, Appellant would be forced into bankruptcy. All parties had an interest in all three cases." Mr. Edmondson argues that the cases are dependent on each other because if a deficiency judgment is obtained by CHP in 2016-4619 and Mr. Edmondson loses his suit against Jeffery Penn in 2016-0598, then he will not be able to pay the deficiency judgment. Additionally, Mr. Edmondson argues that counsel for the Penns made an appearance and "actively argued in defense of CHP and Appellee" in a matter heard on December 6, 2021.

Mr. Edmondson distinguishes the current case from that of *Harmonia LLC v. Felicity Properties Co.*, 23-579 (La.App. 4 Cir. 10/16/23), 376 So.3d 939, arguing that in *Harmonia*, the Harmonia plaintiff never took steps to further the action at any time but instead waited as another plaintiff, Harkins, whose case was consolidated with Harmonia's, pursued its case and relied on Harkins's activity to prevent abandonment in its own cause of action against the defendants. Instead, Mr. Edmondson points to his activity in defending against CHP in the consolidated docket number 2016-4619, as well as the Penns' counsel's alleged appearance and participation in a hearing involving a motion filed by CHP.

Mr. Edmondson also points to a 2023 motion for status conference that does not appear in the appellate record. He argues that it is apparent from the record that the intent and substance of his actions was not to abandon his claim and that his case should not be dismissed on a technicality.

*The Penns' Argument:*

The Penns assert that the last step taken in docket number 2016-0598 was on June 1, 2020, when the parties argued a motion for summary judgment filed in this docket to dismiss claims against Chanda Penn, and its corresponding judgment signed on June 3, 2020, and in docket number 2016-1379 on January 13, 2020, when the cases were consolidated.

The Penns argue that abandonment takes place as a matter of law when a party fails to take a step in furtherance of the prosecution for three years; it is self-executing. *Citing Roubion Shoring Co., LLC v. Crescent Shoring, L.L.C.*, 21-237 (La.App. 5 Cir. 12/22/21), 335 So.3d 354. Additionally, citing *Harmonia LLC*, 376 So.3d 939, they argue that consolidation does not prevent abandonment of an inactive action despite a consolidated action remaining active.

Thereafter, the Penns address the three instances that Mr. Edmondson referred to in brief that prevented abandonment. Regarding June 1, 2021 motions for summary judgment hearing, the Penns note that this actually occurred on June 1, 2020, not 2021, thus, the hearing occurred more than three years before the 2023 motion for status conference and their motion to dismiss. As to an appearance on December 6, 2021, the Penns assert the docketed issues were in the third docket number, 2016-4619, a petition for nullity filed by Edmonson and a peremptory exception filed by CHP. Counsel was present for observation purposes as Jefferey Penn was a named defendant in the CHP action. Additionally, the Penns point out that this hearing was more than three years before their filing of the motion to dismiss.

As to the August 21, 2023 motion for status conference, the Penns argue this only pertained to the third action, 2016-4619, and that a status conference never took

place.  Regardless, the Penns assert that abandonment had tolled prior to this motion being filed.

Considering the above, the Penns allege that the first and second actions were abandoned.

*Law and Analysis:*

Louisiana Code of Civil Procedure Article 561 (emphasis ours) sets forth the law on abandonment:

> A.    (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years, unless it is a succession proceeding. . . .
>
>      . . . .
>
> (2) This provision **shall be operative without formal order**, but, on ex parte motion of any party of other interested person by affidavit that states that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment.  The sheriff shall serve the order in the manner provided in Article 1314 and shall execute a return pursuant to Article 1292.
>
>      . . . .
>
> B.    Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.

The supreme court in *Clark v. State Farm Mutual Automobile Insurance Co.*, 00-3010, p. 6 (La. 5/15/01), 785 So.2d 779, 784 (footnotes omitted), further explained the requirements that courts have imposed on plaintiffs to maintain an action:

> First, plaintiffs must take some "step" towards prosecution of their lawsuit.  In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice.  Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit.  Third, the step must

be taken within the legislatively prescribed time period of the last step taken by *either party;* sufficient action by either plaintiff or defendant will be deemed a step.

The supreme court in *Foundation Elevation & Repair, LLC v. Miller*, 24-810, p. 5 (La. 5/9/25), 408 So.3d 893, 897, emphasized the self-executing nature of La.Code Civ.P. art. 561 and further noticed that "[t]he article is silent on a defendant's waiver of the right to assert abandonment after the three-year period elapses." However, as will be discussed in detail in the following analysis, there are jurisprudentially recognized ways that a defendant may waive their right to assert abandonment. *Id*.

Additionally, "[o]ur jurisprudence has uniformly held Article 561 is to be liberally construed in favor of maintaining a plaintiff's suit. Because dismissal is the harshest of remedies, any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment." *La. Dep't of Transp. & Dev. v. Oilfield Heavy Haulers, L.L.C.*, 11-0912, p. 5 (La. 12/6/11), 79 So. 3d 978, 981–82 (citations omitted).

<u>Period of Abandonment:</u>

The June 1, 2020 hearing and June 3, 2020 summary judgment involved one of the abandoned docket numbers—2016-0598—and it dismissed Chanda Penn from that action. Notice of Signing of Judgment on the summary judgment occurred on June 9, 2020. The judgment denied summary judgment as to Jeffery Penn, and the transcript makes clear the trial court believed there existed "a genuine issue of material fact as to where there was a breach of fiduciary duty." While a claim of breach of fiduciary duty was also made as a cross claim in docket 2016-4619, that claim was dismissed as lis pendens in 2019. Thus, this June judgment is a definite

step in the prosecution of the matter in 2016-0598, the action filed by Mr. Edmondson against Jefferey and Chanda Penn.

As for the second docket number, 2016-1379, the action filed by Solomon's against Mr. Edmondson, the last activity prior to the Penns' ex parte motion to dismiss was the consolidation of the cases in January of 2020.

Therefore, Mr. Edmondson must show a step in the prosecution of these matters between the aforementioned dates and the February 21, 2025 ex parte motion to dismiss for abandonment, or that a waiver of abandonment occurred, to maintain the actions.

Effect of Consolidation:

Mr. Edmondson argues that his actions taken in the consolidated docket number of 2016-4619 should apply to the other two docket numbers to prevent abandonment. However, the court in *Dendy v. City National Bank*, 06-2436, p. 6 (La.App. 1 Cir. 10/17/07), 977 So. 2d 8, 11 (emphasis ours), explained that consolidated actions may retain separate procedural identifies:

> Consolidation of actions pursuant to La. C.C.P. art. 1561 is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity. *Howard v. Hercules–Gallion Co.,* 417 So.2d 508, 511 (La.App. 1st Cir.1982). Procedural rights peculiar to one case are not rendered applicable to a companion case by the mere fact of consolidation; each case must stand on its own merits. *Id.* The filing of a pleading or motion in one of several consolidated cases does not procedurally affect the others. *In re Miller,* 95–1051, p. 5 (La.App. 1st Cir.12/15/95), 665 So.2d 774, 776, *writ denied,* 96–0166 (La.2/9/96), 667 So.2d 541.

> Because consolidation of actions for trial does not procedurally merge the actions for all purposes, the mere fact that a pleading, a discovery response, or correspondence bears the suit captions of the consolidated actions does not render the pleading or document applicable to all of the consolidated actions. **The substance and purpose of such a pleading, the cause of action to which it relates, the parties actually affected, and the particular suit record or records in which it was filed must be considered to determine if it**

11

**applies to only one or more of the consolidated actions.** This issue is particularly significant as it relates to abandonment under La. C.C.P. art. 561. **In some circumstances, a pleading or procedural step may clearly apply to all of several actions consolidated for trial, if it was intended to hasten all of those actions to judgment in a common trial.** *See Reed v. Pittman,* 257 La. 389, 398–99, 242 So.2d 554, 557–58 (La.1970).

In *Dendy*, the court reviewed whether a request for "a status conference in these consolidated cases" filed in the first action prevented abandonment as to the consolidated action. *Id*. at 10. In reversing the trial court's finding of abandonment, the first circuit concluded that a request for a status conference, "given its express purposes," was a step in the prosecution of the action and interrupted abandonment. *Id*. at 15. The court determined the request "sought a conference with the court and other counsel **in both consolidated actions** for the purposes of 'settling pleadings, fixing discovery deadlines, fixing a pre-trial conference, and setting a trial date.' The first three listed items clearly fall within the purposes of a scheduling conference authorized by La. C.C.P. art. 1551(A)." *Id*. at 13 (emphasis ours). The court considered the intent and substance of the pleading over "technical compliance." *Id*. Therefore, the status conference was a step taken in the prosecution of the actions before abandonment accrued.

In *Harmonia LLC*, 376 So.3d at 946, the fourth circuit concluded that steps in a consolidated docket did not prevent abandonment from accruing in the other action. That court stated:

> Although the cases were consolidated, as noted herein, consolidation does not cause the cases to lose its status as procedural entities. Respondent took no step in the prosecution or defense of the case within three years of the filing of a motion for voluntary dismissal. There is nothing in the record outside of Respondents' reliance on the appeal of the Harkins Plaintiffs that showed any step taken by Respondents between June 26, 2019, [the day Respondents dismissed a defendant,] and June 26, 2022.

*Id*. at 946.

However, in *Reed v. Pittman*, 257 La. 389, 242 So.2d 554, (1970), the supreme court found steps taken in a consolidated case applied to prevent abandonment of the other. *Reed* involved a large construction contract between Pittman, the general contractor, and the Housing Authority of New Orleans ("HANO"). Pittman then entered into a subcontract with Reed. Reed initiated suit against Pittman for money due on the subcontract on December 23, 1954. In April 16, 1962, Reed moved to set the case for trial. After several continuances, Pittman filed a rule to show cause why the case should not be dismissed for abandonment in 1968, alleging there was no action between 1956 and 1962.

In response, Reed alleged that actions taken by him in another docket, which had been consolidated, prevented abandonment. The other suit involved a claim by Pittman against HANO to recover "for materials furnished and all work performed by Pittman and its subcontractors (including Reed)[.]" *Id*. at 555–56. The supreme court noted that Pittman eventually recovered a judgment that included "substantially all of the work performed on the Reed subcontract." *Id*. at 556. The two suits were consolidated in 1956. Regarding the consolidation the following occurred:

> In its motion to consolidate, the defendant Pittman made certain pertinent allegations in this pleading in this suit. Pittman alleged that Suit Two involved issues of law and fact which embraced and were related to the issues of the present proceeding (Suit One). The motion further alleged that it was necessary to make Reed a third-party defendant in Suit Two, so that the ends of justice would be served by the consolidation of the present suit with Suit Two.
>
> The trial judge of Division 'E' thereupon ordered the present suit transferred to Division 'F', 'there to be consolidated and tried with' Suit Two.

*Id*. at 555.

In Suit Two "Pittman instituted a third-party demand against Reed . . . for the amount of the alleged defects in the painting contract." *Id*. at 556. Additionally, "Reed asserted the identical claim of $30,005.01 sought by the demand in the present Suit One[,]" although he maintained he should be permitted to pursue this claim in Suit One instead of Suit Two. The court reiterated the intertwined nature of the claims: "To repeat, the various principal and incidental demands in Suit Two all arise out of the prime contract between Pittman and HANO and of several of the subcontracts involved, including the one between Reed and Pittman[.]" *Id*. Further, the court explained:

> However, in affirming Pittman's recovery of some six hundred thousand dollars for contract work performed (including that covered by the Reed subcontract), the court of appeal dismissed all claims between Pittman, Reed, and HANO relating to the painting subcontract. . . .
>
> Nevertheless, when Reed sought once again to assert its claim in this Suit One to recover for money due on the painting subcontract, Pittman successfully claimed that the present Suit One was abandoned.
>
> . . . the plaintiff Reed in the present Suit One could not practically secure any action in it in Division 'E' while it was consolidated with Suit Two in another division and before another judge of the trial court. It further overlooks the several actions taken by Reed and Pittman in this other suit, including the reconventional demand in 1958 by Reed asserting in Suit Two the same claim as that now urged in the present suit.
>
> We should further note that the defendant Pittman secured the consolidation of Suit One with Suit Two and its transfer to another division, upon specific allegations that Suit Two's issues embraced Suit One's and that the interests of justice should best be served by adjudicating all issues of both suits in consolidated proceedings. Pittman itself thus secured this consolidation and transfer which had the effect of staying all proceedings in the present suit.

*Id*. at 556–57. The supreme court acknowledged that consolidated actions retain their separate identities but concluded that a step in one of those cases ***may*** be

regarded as steps in the consolidated case. Therefore, under the facts of *Reed*, the supreme court reversed the dismissal of Reed's claims for abandonment.

Additionally, this court in *Gravlee*, 79 So.3d at 1173, noted:

> The step in the prosecution does not have to be made in the same action. [*Kambur v. Kambur*, 583 So.2d 1213 (La.App. 4 Cir. 1991)]. For example, a step in a partition of community property action, an "action separate and distinct from any separation/divorce action" was held to be a step in the prosecution of the divorce action because it "was inextricably bound up by law with the underlying separation/divorce actions." *Id.* at 1214 (emphasis omitted).

Based on the above, that mere fact that the cases were consolidated does not also mean every action taken applies to each docket number/action. Instead, steps in a consolidated case *may* be steps in the other actions. *See Reed*, 242 So.2d 254.

In the present case, Mr. Edmondson filed a reconventional demand, cross-claim, and third party demand in 2016-4619 involving Jefferey Penn and Chanda Penn. And the cross-claim and third party demand did involve the same claims regarding fiduciary duty breaches by Jefferey Penn that Mr. Edmondson made in 2016-0598. However, those claims were dismissed from 2016-4619 as lis pendens in May 2019. The remaining reconventional demand contained allegations of a conspiracy with CHP. Consolidation occurred on January 13, 2020. Chanda Penn was dismissed from the 2016-0598 breach of fiduciary duty action on June 3, 2020. Thereafter, the activity in 2016-4619 revolved around CHP's main demand for a deficiency judgment and Mr. Edmondson's petition for nullity.

The trial court reviewed the record for all three docket numbers and concluded no steps were taken within a three-year period that moved the prosecution of docket numbers 2016-0598 and 2016-1379. That determination is one of fact. *Gravlee*, 79 So.3d 1169. After review, we cannot say that finding was manifest error. It is clear the actions taken in the 2020–2025 interim involved claims only between CHP and

15

Mr. Edmondson. The record does not indicate that the actions taken in 2016-4619 were intended to hasten the other two matters to resolution. Accordingly, we find no merit to this argument.

December 6, 2021 Appearance:

Edmonson also argues that an appearance by the Penns' counsel on December 6, 2021, in defense of a matter set in the CHP matter, 2016-4619 docket, prevents abandonment. Mr. Edmondson argues that counsel "actively argued in defense of CHP and Appellee" in the matter. The trial court and the Penns' counsel acknowledge that he was present at the hearing and that the minutes reflect his presence. However, the trial court correctly points out that this does not equate to counsel's participation in the hearing or indicate that he "actively argued" as suggested by Mr. Edmondson. The trial court stated after reading the minutes and reviewing the record:

> BY THE COURT:      Yea, I just don't see I think the Judgment speaks clearly about an issue between CHP and Evan Edmondson and that was in court that day. . . .
>
>          . . . .
>
>          The Memorandum, let's see, CHP I have a Memorandum from CHP on that exception by John Mouton and another Memorandum filed by Mr. Moity on behalf of Mr. Edmondson, I don't see where Mr. Joseph, I don't see in the record where, Mr. Joseph filed a Memorandum on behalf of his client and somehow joined in on exception.
>
> BY MR. MOITY:      So if he appears in Court and argues in that case - -
>
> BY THE COURT:      Well I don't have anything that tell[s] me he argued.

The Penns' counsel denied participating in the hearing and stated he was there to observe, reminding the court that Jefferey Penn is a named defendant in the CHP, docket number 2016-4619, action.

The trial court found counsel for the Penns did not participate in the hearing. Additionally, considering his client is a named defendant in that action, there is no indication he was present as counsel in docket number 2016-0598 and 2016-1379. The matter set for hearing dealt only with those issues in the CHP action. We find no manifest error in the trial court's determination. Thus, we find no merit to this argument by Mr. Edmondson.

2023 Status Conference:

Though not a pleading in the appellate record, Mr. Edmondson asserts that he moved for a status conference to set a date for trial in 2023. The Revised Affidavit of Emile Joseph admits that on August 21, 2023, Mr. Edmondson filed a Motion for Status Conference pertaining to his petition for nullity filed in the CHP action, docket number 2016-4619, and that motion also referenced Mr. Edmondson's "primary damage claim." Using August 21, 2023, as the date of this motion, it is clear this potential "step" occurred after abandonment accrued in the dockets at issue, the last steps being in January 2020, and June 2020. Abandonment occurs as a matter of law, it is self-executing. *See* La.Code Civ.P. art. 561; *see also Foundation Elevation & Repair, LLC*, 408 So.3d 893. Therefore, a motion for status conference seeking trial dates filed by Mr. Edmondson would not be a timely step in the prosecution.

However, at the hearing on abandonment, Mr. Edmondson argued that counsel for the Penns responded to dates for the status conference on September 13, 2024, indicating that he was in a deposition the following Wednesday. This email

17

was admitted as evidence at the hearing but does not appear to be in the appellate record. Mr. Edmondson vaguely argues that this response prevents abandonment, and it may if it operates as a defense waiver of abandonment.

In *Foundation Elevation & Repair, LLC*, 408 So.3d 893, the plaintiffs' action was abandoned, as no step in the prosecution or defense was made for a three-year period. However, after the three-year period, the plaintiffs sought to confirm judgment, and one defendant filed a "one-page general denial answer to [the plaintiffs'] petition[.]" *Id*. at 895. On writs, the supreme court found that this action was not enough to constitute a waiver of abandonment. The supreme court clearly distinguished acts constituting a waiver of abandonment before abandonment runs, and those acts occurring post-abandonment. The first is analyzed as a concept akin to acknowledgment, whereas the latter is similar to the concept of renunciation:

> [O]ver the last several decades, jurisprudence of this Court and the courts of appeal have attached a broad jurisprudentially created waiver doctrine to cases involving actions taken after the three-year period has passed, finding that a defendant's post-abandonment actions can serve to waive his right to plead abandonment. This doctrine has its roots in *Chevron* [*Oil Co., v. Traigle*]*,* in which we explained that "abandonment is a form of liberative prescription." 436 So. 2d [530] at 535 n.4 [(La.1983)]. Two principles of liberative prescription are relevant here: acknowledgment and renunciation. La. C.C. arts. 3447, 3449, 3450. Acknowledgment and renunciation differ in both substance and legal effect. *Lima v. Schmidt*, 595 So. 2d 624, 631-632 (La. 1992), *superseded on other grounds.* **Acknowledgment** is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course; **renunciation** is the term designating the decision to abandon rights derived from a prescriptive period that has accrued. *Id.* at 631 (citing La. C.C. art. 3449, cmt. (c)). Renunciation of prescription must be "clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run," whereas "a lesser showing is required to establish an acknowledgement." *Id.* (citation omitted).

> Turning back to the jurisprudence, in *Chevron*, the Court considered a case where a defendant joined in a motion for summary judgment after the abandonment period elapsed. After analyzing the language of article 561, the Court concluded that "submission of an

18

abandoned case for [a] decision effects a waiver of the right to have the suit dismissed because of want of prosecution under article 561 of the Code of Civil Procedure." 436 So. 2d at 535. The Court explained "the concept of post-abandonment waiver is *similar to renunciation*, which may either be express or tacit," and the submission of a case for decision was akin to renunciation of abandonment. *Id.*, at 535 n.4 (emphasis added). Notably, *Chevron* was limited in its application to cases submitted for decision. The Court explained:

> The concept of abandonment is not punitive in nature. The notion is one which is designed to discourage vexatious, harassing or frivolous suits by preventing the plaintiff from allowing such suits to linger indefinitely. Moreover, the threat of abandonment serves to hasten all suits to judgment. Once a case is submitted, its disposition is out of the hands of the parties, and nothing is gained by penalizing them for what they have failed to do before that point.... Nothing is served by allowing the defendant to have a case submitted for judgment declared abandoned. If our goal is to encourage the hasty resolution of disputes, it would be anomalous for us to hold that this goal is somehow advanced by the dismissal of suits that are ready for resolution. Had the legislature intended such a paradox under article 561, it could have so explicitly stated.

*Chevron*, 436 So. 2d at 535.

Despite the caution the Court urged in *Chevron*, post-abandonment waiver jurisprudence continued to expand. The problem arose from this Court's dicta discussing waiver by "acknowledgment" in *Clark v. State Farm Mutual Automobile Insurance Co.*, 2000-3010 (La. 5/15/01), 785 So. 2d 779. Of note, the factual issue presented in *Clark* related to the "step" taken by the defense that occurred *before* abandonment had run. The discussion of post-abandonment waiver by acknowledgement in *Clark* was entirely dicta.

> . . . .

Considering the silence in article 561 on post-abandonment actions, we hold that the proper analysis of a defendant's post-abandonment action is through principles of renunciation, not acknowledgement. Post-abandonment waiver is limited to a situation where a defendant takes an action which renunciates the defense of abandonment by clearly or directly demonstrating his preference and intent to proceed—such as submitting the case for decision to obtain a judicial resolution on the merits. *See Chevron*, 436 So. 2d at 533. *See Slaughter v. Arco Chem. Co.*, 05-657 (La. App. 4 Cir. 4/26/06), 931 So. 2d 387 ("[I]f we were to treat abandonment as a form of prescription, then we must consider 'renunciation' to be the truly correlative

analogous concept."). Mere acknowledgement of the existence of the proceedings is insufficient. Under the facts of this case, DSHR's short general-denial answer, only filed after receiving notice of a motion to confirm a default judgment and followed days later by a motion to dismiss as abandoned, cannot be construed as renunciation of abandonment. The filing did not clearly or directly demonstrate DSHR's preference and intent to proceed with the litigation. The court of appeal erred in reversing the trial court's dismissal of the claims as abandoned.

*Id*. at 897–99 (footnotes omitted). The court, in a footnote, recognized that "[t]he act of waiving abandonment by contract—such as joint stays of proceedings—may be seen as a form of renunciation." *Id*. at 898 n.5.

Prior to the supreme court's decision in *Foundation Elevation & Repair, LLC*, it also similarly ruled that a post-abandonment filing of a continuance with a request for the hearing to be reset waived the defendant's right to abandonment. *Pinnacle Constr. Group, L.L.C. v. Devere Swepco JV, L.L.C.*, 24-406 (La. 2/6/25), 400 So.3d 878. In that case, defendants moved to continue a hearing on co-defendant's petition to annul judgment and included an order requesting another date for the hearing. A subsequent day for the hearing was set, but the hearing was not held. Nearly seven months later, defendants sought dismissal based on abandonment. The plaintiffs asserted that the motion to continue was a step that "facilitated a judicial resolution of the dispute on the merits and [was] an expression of the defendant's willingness or consent to achieve judicial resolution of the dispute." *Id*. at 881. The defendants, instead, asserted that the motion for continuance did not request a specific date and, therefore, was not a step by the defense as it did not "express a willingness to achieve a judicial resolution post-abandonment[.]" *Id*. The supreme court disagreed:

The motion did not request a continuance without date; rather, it reflected an intent to reset the hearing and was accompanied by an order that provided a date for the trial court to reset the hearing. Motions to continue a hearing, accompanied by an order to reset the hearing date,

evidence an intent to advance a lawsuit and are "steps" as contemplated by Article 561.

*Id.* Accordingly, "[b]ased on the facts of this case and considering that La. C.C.P. art. 561 is to be liberally construed in favor of maintaining a plaintiff's suit," the court concluded the defense had waived abandonment. *Id.*

In the case herein, Mr. Edmondson vaguely argued waiver at the hearing. Mr. Edmondson argued that the Penns' response to the status conference indicating that counsel was not available on a certain date prevented abandonment.

After review, we find that Mr. Edmondson did not carry his burden in showing that the Penns waived the defense of abandonment. A mere response that counsel is unavailable on a certain date was not a waiver of abandonment in any certain terms and does not show an intent to advance the abandoned lawsuits. Unlike *Pinnacle Constr. Group, L.L.C.*, the action was not a motion filed by the defense and did not request a date be set or request the conference be held on a specific date. "Mere acknowledgement of the existence of the proceedings is insufficient." *Foundation Elevation & Repair, LLC*, 408 So.3d at 899. Instead, the action should "clearly or directly demonstrate [the defense's] preference and intent to proceed with the litigation." *Id.* Thus, we find there was no waiver of abandonment, and no error in the trial court's finding that the two actions were abandoned.

**DECREE:**

Accordingly, the April 7, 2025 Judgment of the trial court is affirmed. Costs of this appeal are assessed to Evan Edmondson.

**AFFIRMED.**

21